PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-3630

_____

C.H., by and through his parents and
next friends, Timothy and Barbara Hayes

v.

CAPE HENLOPEN SCHOOL DISTRICT;
GEORGE E. STONE, Superintendent of Schools
Cape Henlopen School District;
DELAWARE DEPARTMENT OF EDUCATION;
VALERIE A. WOODRUFF, Secretary,
Delaware Department of Education

C.H. Hayes; Barbara Hayes,

Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-07-cv-00193)
District Judge:  Honorable Mary Pat Thynge

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)

April 12, 2010

Before: FISHER, HARDIMAN and COWEN,
*Circuit Judges.*

(Filed: May 25, 2010)

C. H. Hayes
Barbara Hayes
21055 Cubbage Pond Road
Lincoln, DE  19960
    *Pro Se Appellants*

Michael P. Stafford
Young, Conaway, Stargatt & Taylor
1000 West Street, P.O. Box 391
17th Floor, Brandywine Building
Wilmington, DE  19899-0391
    *Counsel for Appellees, Cape Henlopen*
    *School District and George E. Stone*

Catherine T. Hickey
John B. Hindman
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE  19904
    *Counsel for Appellees, Delaware*
    *Department of Education and*
    *Valerie A. Woodruff*

———

OPINION OF THE COURT

FISHER, *Circuit Judge*.

This appeal arises from an order of the District Court, entered July 22, 2008, granting summary judgment in favor of the Cape Henlopen School District (the "District") and denying appellants' claim for reimbursement of private school tuition and other related costs for their disabled child under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.* Appellants claim that the District's failure to have an individualized educational program (IEP) in effect for their child on the first day of classes warranted their unilateral decision to remove their child from the public school and place him in a private residential school for students with disabilities. Because procedural violations of the IDEA do not merit tuition reimbursement absent a showing of substantive harm, and because unreasonable parent conduct warrants equitable reduction of an award under the IDEA, we will affirm the order of the District Court.

## I.

Plaintiff, C.H., was a minor child during the 2006-2007 school year.[1] C.H. has been diagnosed with dyslexia, dysgraphia, and a severe language disorder and may also suffer

---

[1]To protect the identity of the disabled plaintiff, these proceedings and those underlying it refer to the child, C.H., by his initials only.

from Attention Deficit Hyperactivity Disorder (ADHD) and a central auditory processing disorder. C.H. has thus been identified as a child with a learning disability under 20 U.S.C. § 1401 and 29 U.S.C. § 705 since the 1998-1999 school year. In the relevant time period, C.H. and his parents resided in the Cape Henlopen School District.

The dispute between C.H.'s parents (the "Parents")[2] and the District over the provision of adequate educational resources for C.H. is longstanding. Since 2000, the Parents have unilaterally withdrawn C.H. from the District and placed him in private school on two separate occasions – once in 2002 and again in 2004. In both instances the Parents sought reimbursement from the District for private school tuition and in both instances the District opposed reimbursement. Ultimately, the District and the Parents entered into a Settlement Agreement regarding only the 2005-2006 school year under which the District agreed to pay C.H.'s tuition and certain educational costs at the Gow School, a private residential school for boys with language-based learning disabilities. The Agreement provided that the placement was the sole decision of the Parents, that the District's tuition obligations pertained only to the 2005-2006 year, and that the District was under no obligation to monitor C.H.'s performance or develop an IEP for C.H. while he was enrolled at the Gow School.

_____

[2]We will refer to the Parents collectively, though it is clear that C.H.'s mother, who proceeds *pro se* before this Court, was the active participant in most or all of the relevant proceedings. Although C.H. is no longer a minor, he continues to proceed by and through his Parents.

During the 2005-2006 school year, the Parents discussed with the District C.H.'s potential return to the District for the following year and the need to develop an IEP for C.H. However, the Parents never definitively stated that C.H. would return to the District for the 2006-2007 school year, and had in fact already enrolled C.H. in the Gow School for the 2006-2007 school year as of March 2006. Despite this uncertainty, the District determined that it should evaluate C.H. and develop an IEP in the event C.H. returned to the District. Accordingly, in May 2006, the District sought authorization from the Parents to evaluate C.H. The Parents returned the initial permission form without properly checking the box authorizing the evaluation. The District notified the Parents of this oversight and obtained the properly executed authorization on July 6, 2006. A District Psychologist contacted the Parents on July 24, 2006, to schedule the evaluation. The Psychologist evaluated C.H. on August 7 and 14, 2006, and completed an evaluation report on August 15, 2006.[3]

On August 18, the District sent a notice to the Parents that an IEP team meeting was scheduled for August 22 to review the results of the evaluation and to develop or revise an IEP for C.H. Although the notice came less than ten days before the meeting, in violation of the IDEA notice requirements, C.H.'s mother signed a written waiver of the notice requirement in order to permit the meeting to proceed.

---

[3]The Psychologist later made an addendum to the report after additional documents arrived from the Gow School.

The IEP meeting took place as scheduled on August 22 with C.H.'s mother in attendance. The District Psychologist reviewed his findings and concluded that C.H. remained eligible for special services. However, because of scheduling conflicts of certain members of the IEP team, the meeting concluded before C.H.'s IEP was finalized. Although the District expressed its willingness to promptly schedule a continuation of the meeting, C.H.'s mother indicated that her travel schedule made her unable to meet again until after the start of the 2006-2007 school year. The District proposed that the meeting be continued on September 11, 2006, five days after the first day of classes in the District. C.H.'s mother stated that she had a scheduling conflict with the proposed date, but agreed to tentatively schedule the meeting for September 11. She testified that she anticipated notice of the rescheduled meeting. The District did not send the Parents a written notice confirming the continuation of the IEP meeting.

C.H. did not report to class in the District on the first day of the public school year, September 6, 2006. Rather, his Parents had unilaterally chosen to have him begin classes at the Gow School on September 5, 2006. The Parents did not notify the District at any point in advance of placing C.H. in the Gow School that they intended to seek reimbursement for his tuition from the District.

On September 7, 2006, one day after the start of District classes, the Parents filed a request for a due process hearing before the Department of Education Hearing Panel (the "Hearing Panel"). Despite this due process request, the District intended to proceed with the September 11 meeting. On

6

September 8, the District sent a letter to the Gow School inviting a representative to participate in person or by conference call. C.H.'s mother was sent a copy of this letter. On the morning of September 11, approximately one hour before the scheduled meeting time, the District received a phone call from the Gow School indicating that its representative would not participate in the meeting because C.H.'s mother had informed them that she would not be attending. The Parents later advised the District that, in light of their due process complaint, they would no longer participate in IEP meetings with the District. Additionally, the Parents refused to give the District permission to conduct a speech and language evaluation of C.H., which was necessary in order to develop his IEP.

The Hearing Panel convened in December 2006 to consider the Parents' due process complaint. As the Hearing Panel parsed it, the Parents raised five claims. The first four the Panel treated as alleged procedural violations: the District failed to develop an IEP during the 2005-2006 year while C.H. was at the Gow School, the District failed to provide an IEP for the 2006-2007 year as of the first day of the school year; the District failed to provide the required ten-day notice of the proposed IEP meetings; and the District failed to provide the speech and language evaluation necessary to develop an IEP. The final claim the Panel treated as substantive: the District failed to review and consider the appropriate documentation of C.H.'s performance in conducting his psychological evaluation. As a remedy, the Parents sought the full cost of tuition and all related costs for C.H.'s enrollment in the Gow School for the 2006-2007 school year.

The Hearing Panel conducted a two-day evidentiary hearing, which included testimony from the District Supervisor of Special Programs, the District Psychologist, the Cape Henlopen Principal, the District Special Education Coordinator, the Director of the middle school at Gow School, the Director of the upper school at Gow School, and the District Supervisor of Instructional Support for Special Programs. C.H.'s mother also testified.

Prior to the inception of the hearings, and again in between the two days of testimony, the Parents sought the recusal of the members of the Hearing Panel based on allegations of bias and the Panel members' supposed inability to understand the IDEA. Each member of the Panel considered the recusal request and determined that he/she was not biased and could ably render a decision in the matter.

On January 6, 2007, the Panel issued its decision. The Hearing Panel concluded that all of the Parents' claims – both procedural and substantive – failed under the IDEA because the alleged deficiencies on the District's part did not act to deprive C.H. of a free and appropriate public education.

On April 5, 2007, the Parents filed a Complaint in the United States District Court for the District of Delaware seeking review of the Hearing Panel decision.[4] The parties filed cross-

---

[4]The Complaint also asserts the District Court's jurisdiction under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, and Section 1983, 42 U.S.C. § 1983, without any further factual or legal development. The District

motions for summary judgment. The District Court granted summary judgment to the District and denied summary judgment to the Parents, joining in the reasoning of the Hearing Panel and noting that the Parents' conduct in delaying and then refusing to participate in the IEP meetings, and subsequent refusal to authorize the speech and language evaluation, was a substantial contributing factor to any alleged delays in the IEP development. This timely appeal followed.

## II.

The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A). We have jurisdiction pursuant to 28 U.S.C. § 1291.

The IDEA directs that a reviewing court "is obliged to conduct a modified *de novo* review, giving 'due weight' to the underlying administrative proceedings." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (quoting *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530-31 (4th Cir. 2002)). Factual findings from the administrative proceedings are to be considered prima facie correct. *Id.* We exercise plenary review over the legal conclusions reached by the District Court. *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007).

## III.

Court did not address these claims. The Parents do not raise the Rehabilitation Act claim on appeal, and we address the Section 1983 claim *infra*, in Part III.D.

9

On appeal, the Parents raise two categories of claims. First, they allege that various procedural violations of the IDEA warrant an award of tuition reimbursement for C.H.'s private education for the 2006-2007 school year.[5] Second, they allege that the conduct of the Hearing Panel violated their right to due process. The District argues that the alleged procedural violations did not deprive C.H. of any educational benefit, and, alternatively, that the Parents' conduct warrants equitable denial of reimbursement. We will address these arguments in turn.

## A.    Background

Under the IDEA, a state receiving federal educational funding must provide children within that state a "free appropriate public education" (FAPE). *See* 20 U.S.C. §§ 1412(a)(1)(A), 1401(9). The FAPE required by the Act is tailored to the unique needs of the child by means of an "individualized educational program." *See id.* § 1414(d)(1)(A). An appropriate IEP must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress. *See id.*

The IDEA sets out a variety of procedures to be followed in the creation of the IEP. For instance, the IEP is to be prepared at a meeting including a qualified representative of the

---

[5]The Parents do not raise the substantive claim related to the sufficiency of the documentation reviewed by the District Psychologist in their brief on appeal.

10

local educational agency, the child's teacher, a special education teacher, the child's parent or guardian, and, where appropriate, the child. *Id.* § 1414(d)(1)(B).[6] The local educational agency is to provide the parent with "[w]ritten prior notice" of "any evaluation procedures such agency proposes to conduct[,]" *id.* § 1414(b)(1), or when the agency proposes or refuses to initiate a change in the "identification, evaluation, or educational placement of the child," *id.* § 1415(b)(3). In addition, the statute requires that,

> *[a]t the beginning of each school year*, each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program, as defined in paragraph (1)(A).

*Id.* § 1414(d)(2)(A) (emphasis added).

The IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations. The parent or guardian of a minor student who is denied the rights and procedures set forth in the IDEA is afforded the opportunity to file an administrative complaint and to appeal an adverse determination to a federal district court. *Id.* §§ 1415(b)(6), (i)(2). Accordingly, the Supreme Court has directed that a

---

[6]The attendance of any of such individuals may be waived by agreement between the parent or guardian and the local educational agency, or by prior written input from the absent party. *Id.* § 1414(d)(1)(C).

11

school district's liability for violations of the IDEA is a two-fold inquiry:    (1) Has the school district complied with the procedures set forth in IDEA?; and (2) Has the school district fulfilled its obligation to provide the student with a FAPE?  *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982).

While a failure to satisfy either requirement may merit court-ordered relief, the appropriate relief depends on which requirement is not met.  A plaintiff who alleges the denial of a FAPE may seek compensatory relief in the form of appropriate educational services within the district (referred to as "compensatory education") or tuition reimbursement for an appropriate placement in private school.  *See Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 249 (3d Cir. 2009).  On the other hand, a plaintiff alleging only that a school district has failed to comply with a procedural requirement of the IDEA, independent of any resulting deprivation of a FAPE, may only seek injunctive relief for prospective compliance.  *See P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 738 (3d Cir. 2009) (quoting *Erickson v. Albuquerque Pub. Schs.*, 199 F.3d 1116, 1122-23 (10th Cir. 1999) ("[C]ompensatory education is not an appropriate remedy for a procedural violation of the IDEA.")).

In some cases, a procedural violation may rise to the level of a denial of a FAPE, entitling the plaintiff to compensatory education or tuition reimbursement.  However, "[a] procedural violation of the IDEA is not a per se denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only

12

if such violation causes substantive harm to the child or his parents." *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001) (citations omitted); *see also D.S. v. Bayonne Bd. of Education*, No. 08-4730, ___ F.3d ___, 2010 WL 1610591, at * 9-11 (3d Cir. Apr. 22, 2010) ("A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits."); *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811-12 (5th Cir. 2003) ("[P]rocedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity."); *DiBuo v. Bd. of Educ.*, 309 F.3d 184, 190 (4th Cir. 2002) ("[A] violation of a procedural requirement of the IDEA (or one of its implementing regulations) must actually interfere with the provision of a FAPE."). Under the implementing regulations, substantive harm occurs only if the preponderance of the evidence indicates that

> the procedural inadequacies (i) [i]mpeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of the educational benefit.

34 C.F.R. § 300.513(a)(2).

Where a parent unilaterally places a child into private school, a court or hearing officer may require reimbursement of private school expenses where it finds there has been a substantive harm – namely, that "the agency had not made a

13

[FAPE] available to the child in a timely manner." 20 U.S.C. § 1412(a)(10)(C)(ii).  However, even where private placement is appropriate and reimbursement is otherwise due, the IDEA permits the equitable reduction or elimination of tuition reimbursement under certain circumstances.  The statute provides, in relevant part:

> The cost of reimbursement . . . may be reduced or denied-
>
> (I) if-
>
>> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>>
>> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);

14

(II) if, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(3) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or

(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents.

*Id.* § 1412(a)(10)(C)(iii).

### B. Tuition Reimbursement for Procedural Violations of the IDEA

The Parents here seek tuition reimbursement for C.H.'s private education at the Gow School. (Compl. Relief ¶¶ d-g.) Thus, in order to recover, the Parents must demonstrate that the District violated the IDEA in a way that caused a substantive harm – either by depriving C.H. of an educational benefit or significantly impeding the Parents' participation in the decision-making process regarding C.H.'s education. The Parents premise their alleged harm on the District's procedural violations of the IDEA. These procedural violations take two principal forms: the District's failure to have an IEP in place on the first day of the 2006-2007 school year, and the District's failure to notify the Parents ten days prior to any scheduled IEP

15

meeting.[7]  The District Court reasoned that these procedural violations, to the extent they occurred, did not rise to the level of the denial of a FAPE.  We agree.

### 1. Failure to Develop an IEP as of the First Day of Classes

There is no dispute that the District failed to have an IEP in place on the first day of the 2006-2007 school year.  This is a violation of the plain mandate of the IDEA that a District should have an IEP in place "[a]t the beginning of each school year." 20 U.S.C. § 1414(d)(2)(A).  Thus, acknowledging that a procedural violation has occurred, we must determine whether, under the circumstances, this violation can meaningfully be said to have "[i]mpeded the child's right to a FAPE" or "caused a deprivation of [an] educational benefit." *Id.* § 300.513(a)(2)(i), (iii).

---

[7]In fact, the Parents allege a host of procedural violations over the course of the year preceding the 2006-2007 school year, including the District's failure to complete the speech and language evaluation that C.H. needed before the District could develop an IEP.  (*See* Parents' Br. 11 ("[T]he District's procedural violations began in December of 2005 when they recommended evaluations.").)   However, these alleged procedural violations really boil down to one essential complaint:  that the District failed to take the necessary steps to timely develop an IEP.  Accordingly, we will address these allegations as related claims in support of the Parents' contention that the failure to have an IEP in place on the first day of the school year denied C.H. a FAPE.

16

The Fourth Circuit considered this question under similar circumstances in *MM v. School District of Greenville County*, 303 F.3d 523 (4th Cir. 2002). In *Greenville*, a four year-old child ("MM") suffered from a form of dystrophy and mild autism and was enrolled in a public preschool program, receiving special services under the IDEA. *Id.* at 528. Her parents also participated in a private in-home program for autism when MM was not in preschool. *Id.* For the 1995-1996 school year, MM had an IEP in place that the parents had approved. *Id.* In May of 1996, the IEP team convened to reassess MM's progress and proposed an IEP that did not include "extended school year" services to cover a summer educational program for MM. *Id.* at 528-29. The parents objected and the IEP was not agreed to for the 1996-1997 school year. *Id.* at 529. A subsequent meeting on August 8 was similarly unsuccessful, in large part because the parents insisted that the in-home autism treatment should be part of the IEP. *Id.* A third meeting was scheduled for August 22, but the parents cancelled the meeting. *Id.* The parents then unilaterally decided to enroll MM in a private kindergarten program, and she never attended classes in the public school district for the 1996-1997 school year. *Id.*

In assessing the parents' claim for reimbursement of MM's private tuition costs, the court considered whether the school district's failure to have an IEP in place before the start of classes "resulted in the loss of an educational opportunity for the disabled child, or whether . . . it was a mere technical contravention of the IDEA." *Id.* at 533. Under the facts of that case, the court reasoned that "the District was willing to offer MM a FAPE, and that it had attempted to do so[,]" and that "her

17

parents had a full opportunity to participate in the development of the Proposed 1996-97 IEP." *Id.* at 534. Additionally, there was no evidence that MM suffered any educational loss because her parents "would [not] have accepted any FAPE offered by the District that did not included reimbursement for the [in-home autism] program" and "MM suffered no prejudice from the District's failure to agree to her parents' demands." *Id.* at 535. The court ultimately concluded that "[b]ecause this procedural defect did not result in any lost educational opportunity for MM," the reimbursement claim failed. *Id.* The court further admonished, "it would be improper to hold [the] School District liable for the procedural violation of failing to have the IEP completed and signed, when that failure was the result of [the parents'] lack of cooperation." *Id.* at 534 (quoting district court slip op. at 15).

On the other hand, we note the Sixth Circuit, in *Knable v. Bexley City School District*, 238 F.3d 755, 766-67 (6th Cir. 2001), held that a "draft" IEP did not satisfy the IDEA and that the school district's failure to formulate a final IEP prior to the start of the school year resulted in a denial of FAPE. However, central to the Sixth Circuit's analysis was the fact that the school district there never convened an IEP meeting, either before or after the start of the school year, and that the disabled student enrolled in the district for the school year and never received an IEP. Thus, the court reasoned, "the absence of an IEP at any time during [the child's] sixth-grade year caused [him] to lose educational opportunity." *Id.* at 766.

Reconciling these approaches, we find the Fourth Circuit's reasoning in *Greenville* highly persuasive in our

18

present analysis. The District here demonstrated consistent willingness to evaluate C.H. and to develop an IEP for the 2006-2007 school year. Despite some initial delays in finalizing the authorization, C.H. was evaluated by a District psychologist a month before the start of school and an IEP team convened shortly thereafter to develop his educational program. Although the IEP was not completed in the first meeting, it was the Parents and not the District who delayed the continuation of that meeting until after the start of classes, and ultimately terminated the process by filing a due process request. Like the court in *Greenville*, we decline to hold that a school district is liable for procedural violations that are thrust upon it by uncooperative parents.

Additionally, we lack the essential element in the Sixth Circuit's analysis in *Knable*: the ability to determine whether the failure to develop an IEP on the first day of classes would have resulted in a lost educational benefit for the disabled child. C.H. never attended a single class in the District in the 2006-2007 school year. The Parents enrolled C.H. in Gow on the presumption that the District's failure to have the IEP in place on the first day would deprive C.H. of an educational benefit. Neither the Hearing Panel nor the District Court credited this presumption as fact. Rather, the Hearing Panel reasoned that an IEP could have been developed for C.H. within a week of the start of the school year, had C.H. remained in the District and had the Parents continued to cooperate. We will not disrupt that determination in the face of mere supposition.

Absent any evidence that C.H. would have suffered an educational loss, we are left only to determine whether the

19

failure to have an IEP in place on the first day of school is, itself, the loss of an educational benefit. While we do not sanction a school district's failure to provide an IEP for even a *de minimis* period, we decline to hold as a matter of law that any specific period of time without an IEP is a denial of a FAPE in the absence of specific evidence of an educational deprivation. As the Supreme Court has cautioned, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

Accordingly, the District's failure to have an IEP in place on the first day of classes did not deprive C.H. of a FAPE, and reimbursement on that basis was properly denied.

## 2. Failure to Provide Ten-Day Notice of IDEA Meetings

Next we turn to the question of whether any alleged failure on the District's part to timely notify the Parents of IEP meetings "significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE[.]" 34 C.F.R. § 300.513(a)(2)(ii).

As explained above, the IDEA contains a notice provision, requiring prior written notice to parents whenever an agency proposes or refuses to initiate or change "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(3). These procedures are designed

to ensure that the parents of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to these decisions. *See id.* § 1415(a). Thus in cases where a violation of a notification requirement does not actually impair the parents' knowledge of, or participation in, educational decisions, the violation is not a substantive harm under the IDEA. *See*, *e.g.*, *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir. 1997) (noting that parents received late notice with ample time to respond and holding that "[b]ecause any violation of the notice provisions did not interfere with the provision of a free appropriate public education to [the child], these violations cannot subject [the district] to liability for reimbursement of [private school] tuition").

We are not persuaded that the alleged notification violations here impaired the Parents' ability to participate in the IEP meetings. As to the first meeting on August 22, C.H.'s mother signed a written waiver of ten-day notice of IEP meetings, leading the District Court to correctly conclude that no notice violation occurred. However, even if a violation had occurred, the Parents do not claim it had any effect on their ability to participate fully in the meeting, and C.H.'s mother attended the August 22 meeting without objection.

Further, the Parents do not allege that they were unaware of the September 11 continuation of the IEP meeting, only that they did not receive the formal notice required by the IDEA.[8] In

_____

[8]The District Court concluded that, because the September 11 meeting was merely a continuation of the August 22 meeting, no new notice was necessary. (Dist. Ct. Slip

21

fact, C.H.'s mother testified that she was present when the District scheduled the meeting for September 11, though she says she did not commit to it and expected notice when the date was finalized. She further testified that the reason she did not attend the September 11 meeting was because she had filed for due process, not because she was unaware of the meeting schedule.

The procedural requirements of the IDEA governing notice of IEP meetings are intended to ensure parental participation in the IEP process, not to provide the Parents with a hook on which to hang a tuition reimbursement claim. It is clear to us, as it was to the District Court, that the Parents have been their own greatest impediment to participation in the evaluation of C.H.'s disabilities and the development of an appropriate IEP. We therefore affirm the District Court's rejection of the argument that any notice deficiencies rise to the level of substantive harm.

## C.     Equitable Reduction of Reimbursement

Although we hold that C.H. was not denied a FAPE and therefore cannot seek tuition reimbursement for his private education, we agree with the District that, alternatively, equitable considerations weigh against granting the relief sought by the Parents. Even where a District is found to be in violation

Op. 13.) The Parents insist they were owed additional notice under the IDEA. Because we agree that the notice violation, even if it had occurred, does not constitute a denial of a FAPE, we need not resolve this dispute.

22

of the IDEA and private school placement is deemed appropriate, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2496 (2009).[9] The IDEA directs that an award of private school tuition "may be reduced or denied" under a variety of circumstances, including "upon a judicial finding of unreasonableness with respect to actions taken by the parents," 20 U.S.C. § 1412(a)(10)(C)(iii)(III), or where parents fail to give the school district ten days notice prior to enrolling a child in private school, *id*. § 1412(a)(10)(C)(iii)(I)(bb).[10]

There is no question here that the Parents unilaterally withdrew C.H. from the District without any prior notice to the District. Further, there is no question that the Parents' conduct

---

[9]Although *Forest Grove* was decided after the District Court's consideration of this matter, the principles stated therein with regard to equitable relief under the IDEA are not new. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 374 (1985) ("[E]quitable considerations are relevant in fashioning relief" under the IDEA).

[10]The IDEA provides for exceptions where reimbursement need not be denied despite the failure of the parents to notify the school district of their intent to place their child in private school – for example where the parents were not notified of the notice requirement or where compliance would result in harm to the child. *See* 20 U.S.C. § 1412(a)(10)(C)(iv)(IV). The Parents have not alleged the application of any of these exceptions here.

23

in delaying the continuation of the IEP meeting and cancelling the speech and language evaluation substantially precluded any possibility that the District could timely develop an appropriate IEP for C.H. and provide the necessary services to him, or that the parties could resolve this dispute without resort to litigation. The District argues that this conduct warrants equitable denial of reimbursement, as allowed by statute.

In response, the Parents contend that their refusal to continue with IEP development or permit evaluation of C.H. after they filed their due process request is a right conferred on them by the IDEA. For this proposition, they refer to § 1415(j), which provides:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents . . . otherwise agree, the child shall remain in the then-current educational placement of such child . . . .

20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a).[11] Commonly referred to as the "stay-put" provision, § 1415(j)

---

[11]In actuality, the Parents mistakenly cite 34 C.F.R. § 300.514 for the proposition that "[n]o change in identification, evaluation, program, educational placement or IEP may be made during the process of a hearing unless agreed to by both parties." (Parents' Br. 11.) Although this overstates the command of § 1415(j), we construe the citation as a reference to 34 C.F.R. § 300.518(a), the implementing regulation of § 1415(j).

protects the status quo of a child's educational placement while a parent challenges a proposed change to, or elimination of, services.

The Parents grossly misread the effect of this provision. The stay-put provision merely ensures that a disabled child's educational services are not altered or reduced until the parent has an opportunity to avail herself of the appeal procedures. The stay-put provision was never intended to suspend or otherwise frustrate the ongoing cooperation of parents and the school district to reach an amenable resolution of a disagreement over educational services. In fact, the IDEA specifically obligates the parents to participate in a resolution session with the school district after a due process request is filed "where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint." 20 U.S.C. § 1415(f)(1)(B)(i)(IV).[12] The inclusion of a mandatory resolution session clearly reflects Congress' intention that parents and school districts continue to work toward the resolution of disputes and the provision of appropriate educational services even after a due process request is filed. *See also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) ("The core of the [IDEA] . . . is the cooperative process that it establishes between parents and schools."). The stay-put provision does not, therefore, excuse the Parents, who based

_____

[12]The resolution session can be waived by agreement of the parties. *See* 20 U.S.C. § 1415(f)(1)(B)(i)(IV). The record does not reflect whether the Parents and the District here waived the resolution session.

their complaint on the absence of an IEP, from continuing to meet with the District to rectify the perceived wrong.

The Parents here have disregarded their obligation to cooperate and assist in the formulation of an IEP, and failed to timely notify the District of their intent to seek private school tuition reimbursement.  We believe these are among the "unreasonable[] . . . actions taken by the parents," 20 U.S.C. § 1412(a)(10)(C)(iii)(III), that Congress contemplated when it gave courts the authority to equitably reduce or eliminate tuition reimbursement.  *See Forest Grove*, 129 S. Ct. at 2496 (noting instance of unreasonableness where "the parents failed to give the school district adequate notice of their intent to enroll the child in private school").  The IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations.  *See Roland M. v. Concord Sch. Comm.*, 910 F.2d 893, 995 (1st Cir. 1990) ("The law ought not to abet parties who block assembly of the required team and then, dissatisfied with the ensuing IEP, attempt to jettison it because of problems created by their own obstructionism.").  Accordingly, we also will also affirm the denial of the Parents' request for tuition reimbursement on equitable grounds.

### D.       Section 1983 Claim for Denial of Due Process in State Administrative Proceedings

Finally, on appeal, the Parents contend that the District Court erred in failing to separately address their claim that the conduct of the Hearing Panel, in denying certain procedures, violated their rights to procedural due process.  Specifically, the

26

Parents allege that the Hearing Panel "made no findings of facts based on determination of testimonial credibility[,]" "refused to rule on the Plaintiff Parent's right to review the child's entire educational record for evidentiary disclosure[,]" and that the Panel chairperson "utiliz[ed] leading questions, had the witness rephrase her answers to conform to the answers provided by the Panel Chairperson[,] . . . and requested the District recall a witness for rebuttal so she could ask questions." (Parents' Br. 3-4.) Presumably these allegations are premised on some of the same perceived deficiencies that led the Parents to repeatedly seek the recusal of the Panel members, though the record of the recusal proceedings is not before us on appeal.

Upon review of the Complaint, we find no due process claim asserted in the District Court. Although the Complaint asserts the District Court's jurisdiction under 42 U.S.C. § 1983, through which an individual can seek damages for certain constitutional deprivations, the Parents failed to allege any misconduct by the Hearing Panel to the District Court. Nor do the Parents request any relief pursuant to § 1983. Accordingly, we will not address the merits of a constitutional argument for the first time on appeal. *See Ross v. Hotel Emps. and Rest. Emps. Int'l Union*, 266, F.3d 236, 242 (3d Cir. 2001) ("[A]bsent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.") (quotations and citations omitted).[13]

---

[13]Neither can the Parents tie any alleged procedural deficiencies before the Hearing Panel into their requested remedies under the IDEA. The IDEA states that a party "shall have the right to bring a civil action *with respect to the*

27

## IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to the District and denial of summary judgment to the Parents.

---

*complaint presented* pursuant to this section[.]" 20 U.S.C. 1415(i)(2)(A) (emphasis added). Thus, "a party seeking judicial relief from the decision of state administrative proceedings may do so only to the extent that the party sought such relief in those proceedings." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 186 n.14 (3d Cir. 2009). As a matter of chronology, a state administrative complaint could not seek relief for a due process violation that had not yet occurred. Thus, any claim for deprivation of procedural due process in the state administrative proceedings cannot be redressed by the remedial provisions of the IDEA; the aggrieved party must file a separate § 1983 action in the District Court, supported by appropriate factual allegations.