Dissenting opinion filed by Circuit Judge HARDIMAN.
OPINION OF THE COURT
RENDELL, Circuit Judge.
This is an appeal from the District Court’s reversal of a state administrative law judge’s (ALJ) award of tuition reimbursement for plaintiffs in an Individuals with Disabilities in Education Act (“IDEA”) case. We will vacate the judgment below and remand.
*240 I. Background
T.W. is a child with learning disabilities. His parents, along with the school district of Upper Freehold (the “District”), developed an individualized education plan (“IEP”) for the 2006-07 school year that called for T.W. to split his school days between the District’s preschool and the “Project Child” preschool in the Mercer County Special Services School District. Although T.W. turned four early in the 2006-07 school year, he was placed in a classroom at Project Child with three-year olds who would turn four in the calendar year 2007. T.W.’s birthday is in September 2002, shortly before the October 1st date that the District uses as a cut-off for class years. Therefore, if T.W. was placed in a classroom based on his date of birth, he would be one of the youngest students. In his Project Child classroom, by contrast, he was one of the oldest students.
The current dispute relates to a disagreement between T.W.’s parents and the District about T.W.’s education for the 2007-08 school year. Prior to a June 15, 2007 meeting of T.W.’s IEP team, the District provided T.W.’s parents with a draft IEP, proposing that T.W. be placed in kindergarten the following fall and receive certain additional services and therapies. At the June 15 meeting, the parents urged that T.W. be placed in preschool for another year. The meeting adjourned without agreement on an IEP. Another meeting was scheduled for June 29, 2007, but never took place. The District asserts that T.W.’s parents cancelled the meeting, whereas the parents contend that they merely requested a postponement to give a psychologist working with T.W. time to complete her full report.
By letter dated June 29, 2007, the District sent T.W.’s parents an amended IEP for the 2007-08 school year, again calling for T.W.’s placement in kindergarten but adding additional supports and services recommended by a team of Yale researchers that analyzed T.W. at his parents’ behest. The cover letter enclosing the amended IEP stated “[y]ou have 15 days to respond.” (A2109.)
T.W.’s parents responded by letter dated July 3, 2007, stating that “the document purporting to be an IEP was generated without our participation” and that, because the parties had not discussed their “unresolved issues” at an IEP meeting, “the document [the parents] received could not constitute the district’s formal proposal.” (A2110.) The letter concluded by stating, “[w]e look forward to your response.” (A2110.)
On July 12, 2007, T.W.’s parents filed a request for mediation and a due process hearing. They claim they filed their petition when they did because they believed that, under New Jersey law, the District’s June 29 IEP placing T.W. in kindergarten would have gone into effect unless they requested mediation or a due process hearing within 15 days of the IEP proposal. See N.J.A.C. § 6A:14-2.3(h)(3).
The parties met again in August 2007 to try to resolve their dispute. At that meeting, the parents presented the district with a letter from T.W.’s developmental pediatrician, Dr. Anna Baumgaertel, explaining that she recommended another year of preschool for T.W. so that he could “work on his significant social deficits.” (A2124.) The meeting concluded without an agreement.
In September 2007, T.W.’s parents unilaterally placed him as a regular student in the Project Child preschool program. On September 11, 2007, they advised the District by letter that they would be making the placement immediately and that they were “unable to wait ten business days to make the placement [pursuant to 20 U.S.C. *241 § 1412(a)(10)(C)(iii)(I)(bb) 1 because to do so would cause [T.W.] to suffer severe harm.” (A2125.)
In the beginning of the 2007-08 school year, T.W. did not receive one-on-one services and therapies at Project Child. However, on November 19, 2007, T.W.’s parents and Project Child agreed on an educational plan for T.W. that called for him to receive additional services and be in a smaller classroom setting. The District did not participate in the making of this plan.
An ALJ hearing was conducted over eleven days in 2008 and early 2009. The ALJ thoroughly described the evidence presented in a 54-page opinion. He found both the District’s witnesses and T.W.’s expert witnesses credible. He found that “[i]f placed in kindergarten in the 2007-08 school year, T.W. would do ‘fine academically,’ but it could increase his social awkwardness and withdrawal.... [F]or the 2007-08 school year placement in kindergarten pursuant to an IEP with supports and services was necessary for T.W. to have a FAPE.” (A58 (emphasis added).) The ALJ noted that when T.W. was placed in Project Child’s full-day preschool program for the 2007-08 school year, he “did not receive the therapies and/or related services that the [District] would have provided pursuant to the draft IEP and I find that this placement in Project Child did not provide T.W. with a FAPE.” (A58.) However, the ALJ found that “[o]n November 19, 2007, without inviting the [District] educators to participate in an IEP meeting [T.W.’s parents] and Project Child agreed to an IEP for T.W.” (A59.)
The District argued that it offered an IEP for the 2007-08 school year that would have provided a FAPE and that T.W.’s parents refused and/or failed to participate meaningfully in the IEP-development process, so their claim for reimbursement should therefore be dismissed. The ALJ’s complete response follows:
[D]uring the summer of 2007 the parties had reached an impasse: the petitioners would not agree to an IEP that provided for placement in kindergarten for the 2007-08 school year and, consistent with the findings of fact, placement in kindergarten would not have provided a FAPE. On the other hand, the placement of T.W., a disabled child, in Project Child as a regular student and without an IEP also did not provide him with a FAPE. T.W. did not have an IEP until after November 19, 2007, and the unilateral placement did not provide a FAPE until after November 19, 2007. Consequently, the [District] cannot be ordered to reimburse [T.W.’s parents] for the unilateral placement before that time. However, the [District] is responsible for the reimbursement for the unilateral placement for the period after November 19, 2007, until the end of the 2007-OS school year.
(A63.) The ALJ made no specific finding as to whether the District’s draft amended IEP offered a FAPE or whether the IEP provided sufficient “supports and services” to make the placement in kindergarten a FAPE. (See A58 (ALJ opinion) (“[F]or the 2007-08 school year placement in kindergarten pursuant to an IEP with supports and services was necessary for T.W. to have a FAPE.”).)
The parties appealed to the District Court for the District of New Jersey and submitted cross-motions for judgment on the record. Relying on our decision in C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59 (3d Cir.2010), the District Court held that the parents were not entitled to reimbursement. The District -Court concluded that the parents’ actions “deprive the Court of the ability to determine whether the District proposed an appropriate IEP.” *242 (A8.) Furthermore, the District Court denied reimbursement on “equitable grounds, as provided for in 20 U.S.C. § 1412(a)(10)(C)(iii),” saying that the parents “did not provide adequate notice to the District of their unilateral withdrawal of T.W. from the public placement,” and that their “conduct in delaying, cancelling, or refusing to set up additional meetings with the IEP team substantially precluded any possibility that the District could timely develop an appropriate IEP for T.W.” (A9.)
II. Standard of Review
On appeal from an ALJ’s determination in an IDEA case, the district court is to “give due weight and deference” to the ALJ’s findings and consider the ALJ’s factual findings to be prima facie correct. D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir.2010); see also Bd. of Educ. of Hendrick Hudson Ctrl. Sch. Dist. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (“[D]ue weight shall be given to [state administrative] proceedings.”). According “due weight” to the ALJ’s findings means that the district court has an obligation “to consider — although not necessarily to accept—the administrative fact findings.” Carlisle Area Sch. v. Scott P., 62 F.3d 520, 529 (3d Cir.1995) (citing Oberti ex rel. Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1219 (3d Cir.1993)). The district court “must independently review the evidence adduced at the administrative proceedings and can receive new evidence.” Oberti, 995 F.2d at 1219. Ultimately, the district court must “ ‘make an independent determination based on a preponderance of the evidence.’ ” Id. (quoting Geis v. Bd. of Educ., 774 F.2d 575, 583 (3d Cir.1985)). A district court “should defer to the hearing officer’s findings based on credibility determinations unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion.” Carlisle, 62 F.3d at 529.
We review a district court’s findings of fact for clear error and exercise plenary review over the legal standards the district court applies and the legal conclusions it reaches. Bayonne Bd. of Educ., 602 F.3d at 564. Under a clear error standard of review, “we accept the District Court’s ultimate factual determinations unless ‘that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.’ ” N.J. Retail Merchants Ass’n v. Sidamon-Eristoff, 669 F.3d 374, 390 (3d Cir.2012) (quoting Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir.1972)). Where parents allege that “the district court failed to observe its own proper scope of review, we must determine whether the district court erred in its interpretation or application of the law governing the administrative review process, a question over which we exercise plenary review.” Carlisle, 62 F.3d at 526 (citing Louis W. Epstein Family P’ship v. Kmart Carp., 13 F.3d 762, 765-66 (3d Cir.1994)).
III. Discussion
The IDEA authorizes tuition reimbursement for parents who unilaterally decide to place their child in an out-of-district school if the IEP proposed by the school district failed to offer the child a FAPE and the placement the parents chose was proper under the IDEA. Sch. Comm. of Burlington v. Dep’t of Educ. of Mass., 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). The District Court failed to analyze these issues and instead relied on Cape Henlopen as the basis for *243 denying tuition reimbursement to T.W.’s parents. This was error.[1] Cape Henlopen presented a very unique situation, and the holding in that case simply cannot be applied once the parties have been working toward formulating an IEP, and then reach an impasse. In Cape Henlopen, the petitioners alleged that the school district committed a procedural violation of the IDEA when it failed to have an IEP in place for their child on the first day of school. 606 F.Sd at 68-69. We noted that this failure was a result of the parents’ decision to delay an IEP team meeting until after classes had begun. Id. at 69. We therefore “decline[d] to hold that a school district is liable for procedural violations that are thrust upon it by uncooperative parents.” Id. Here, in contrast, the parents do not complain that the school district failed to timely implement an IEP. Rather they complain that the substance of the proposed IEP, which was developed after meetings and correspondence between the parties, did not provide a FAPE because it called for T.W. to attend kindergarten, not preschool, for 2007-08. The alleged problem with the IEP was not that it could not be developed due to “uncooperative parents.” Id. Rather, the problem was that the IEP offered would place T.W. in kindergarten for the school year 2007-OS.[2] The parents’ disagreed with that proposal, resulting in what the ALJ characterized as an “impasse.” (A68.) To say that Cape Henlopen would apply to totally bar parents from reimbursement after negotiations reached an impasse is to fault them for failing to agree to whatever the school district presents, whether justified or not.[3] Here, the District Court erred when it abbreviated its analysis based on the parents’ conduct and failed to determine *244 whether the District’s proposed IEP was appropriate. It should have considered the substance of the District’s most recent proposed IEP and determined if it met the IDEA’S substantive requirements. See Rowley, 458 U.S. at 208, 102 S.Ct. 3034 (holding that a state satisfies the IDEA’S requirement to offer FAPE “by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction”); Bayonne Bd. of Educ., 602 F.3d at 556 (“Although a state is not required to supply an education to a handicapped child that maximizes the child’s potential, it must confer an education providing ‘significant learning’ and ‘meaningful benefit’ to the child.” (quoting Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999))). We will remand for the District Court to address that issue.
Additionally, we find error in the District Court’s denial of reimbursement on equitable grounds based on the parents’ conduct. Again, the District Court’s reliance on Cape Henlopen was misplaced. The ALJ had not considered the parents to be unreasonable or to have refused to work with the District to develop an IEP. Instead, the ALJ recounted all of the meetings and correspondence between the parties and then characterized the situation as an “impasse.” (A63.) This clearly connotes an inability of both sides to agree, not the arbitrary refusal of one side to come to the table. We agree. Our review of the record leads us to conclude that the District Court’s finding “that the Parents’ conduct in delaying, cancelling, or refusing to set up additional meetings with the IEP team substantially precluded any possibility that the District could timely develop an appropriate IEP for T.W. and provide the necessary services to him” was clearly erroneous. (A9.) Unlike the parents in Cape Henlopen, T.W.’s parents did not “disregard[ ] their obligation to cooperate and assist in the formulation of an IEP.” 606 F.3d at 72. The record clearly indicates that the parents participated in the IEP development process and tried to work with the District to develop an IEP. However, the parties reached an impasse based on the parents’ insistence on preschool and the District’s insistence on kindergarten. Denial of reimbursement based on this aspect of the parents’ conduct was improper.
In discussing its alternative holding to deny reimbursement on equitable grounds, the District Court noted that T.W.’s parents did not provide adequate notice to the District, pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii), of their intent to withdraw T.W. from the District’s school. The IDEA states that failure to give the statutorily required notice can justify the “re-duc[tion] or deni[al]” of a reimbursement award. 20 U.S.C. § 1412(a)(10)(C)(iii)(I). However, it is unclear to us whether the District Court’s equitable reduction was tainted by its erroneous determination that T.W.’s parents acted unreasonably in the IEP development process. Therefore, on remand, after the District Court determines whether T.W.’s parents are eligible for tuition reimbursement, it may examine to what extent any reimbursement award may be equitably reduced based on § 1412(a)(10)(C)(iii)(I). If the District Court reaches this issue on remand, it should consider the equities, including the parents’ argument that delay in placing T.W. in Project Child would have caused him severe harm and the extent to which the District was prejudiced by receiving late notice of the parents’ decision. The District Court may, of course, take additional evidence on this issue or remand the case to the ALJ for further fact-finding.
In sum, the District Court erroneously short-circuited the required analysis by ap *245 plying our ruling in Cape Henlopen to deny T.W.’s parents tuition reimbursement. In so doing, the District Court did not reach the real issue before it: whether the IEP proposed by the District offered T.W. a FAPE, and, if not, whether the placement at Project Child was proper under the IDEA.[4] Burlington, 471 U.S. at 370, 105 S.Ct. 1996; Florence, 510 U.S. at 15, 114 S.Ct. 361. The District Court must engage in this analysis on remand.
We note that there is a paucity of reasoning in the ALJ’s opinion regarding these crucial analytical issues. The ALJ’s opinion states that “placement in kindergarten pursuant to an IEP with supports and services was necessary for T.W. to have a FAPE,” but does not explain why kindergarten placement with the support services provided for in the revised IEP— including all of the recommendations proposed by the Yale researchers—was insufficient to provide a FAPE. (A58 (emphasis added).)[5] The ALJ embraces the opinion of Dr. Baumgaertel (who never saw the District’s proposed IEP), yet never indicates why the opinions of the District’s experts (whom he credited) were rejected. If the District Court so desires, it may request a remand to the ALJ so that this aspect of its opinion can be expanded.
Accordingly, we will vacate the judgment below and remand for further proceedings consistent with this opinion.

. We note that the ALJ did not have the benefit of our decision in Cape Henlopen, which was issued after his decision in this case. Even so, we do not believe that affects our analysis. As explained below, we believe that the behavior of T.W.'s parents was quite different from the conduct of the parents in Cape Henlopen.

. While the dissent believes that the procedural versus substantive distinction makes little difference, we disagree. The reason the parents in Cape Henlopen complained of a procedural violation — the failure of the school district to have an IEP in place on the first day of school—was that there was no IEP offered, because the parents refused to attend meetings or permit testing required in order for an . IEP to be prepared. C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 64 (3d Cir.2010) (“[T]he Parents refused to give the District permission to conduct a speech and language evaluation of C.H., which was necessary in order to develop his IEP.”). No mention is made in Cape Henlopen of any proposed program, or the parents’ wishes, if any, regarding schooling. We correctly held that where the parents essentially prevented the formulation of the IEP, the school district could not be held responsible for the procedural violation.

.The dissent suggests that so long as a school district presents its proposed IEP as a "draft” rather than "final proposal,” a parent who unilaterally places her child in private school has "short-circuited the IEP-development process” and can be barred from tuition reimbursement based on Cape Henlopen. (Dissenting op. at 247 & n. 4.) This cannot be. Under the dissent's proposal, school districts could force parents into perpetual negotiations and effectively gut a parents’ right to tuition reimbursement for a unilateral placement. The IDEA does not permit school districts to hold parents hostage merely by styling an IEP as a "draft” subject to the possibility of revision, however remote. Parents who make unilateral placements for their children surely take a risk that they will later be found to have pulled out of negotiations prematurely. Cf. Sch. Comm. of Burlington v. Dep’t of Educ. of Mass., 471 U.S. 359, 373-74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (noting that parents who make unilateral placements "do so at their own financial risk”). However, we disagree with our dissenting colleague that school districts can unilaterally dictate how long negotiations must continue by deciding when to call their proposals "final.”

. The District Court stated that "[bjecause the November [19, 2007] plan [drawn up by T.W.’s parents and Project Child] was developed in the absence of the District, it was legal error for the AU to conclude that it was an IEP” and that "[therefore, the ALJ could not find that T.W.’s placement at the outside program was proper.” (A6-7.) While it is true that the educational plan was not technically an IEP, this fact alone does not prevent the parents from receiving tuition reimbursement. The IDEA allows parents of disabled children to be reimbursed for expenditures on private special education if (1) the IEP calling for placement in a public school was inappropriate and (2) the private placement desired by the parents was proper under the Act. Florence, 510 U.S. at 15, 114 S.Ct. 361. To satisfy the second step of this test, parents seeking reimbursement for the unilateral placement of their child in an out-of-district school need not show that the out-of-district school provided their child with an IEP; they need only show that the alternative placement was "proper.” Id. This does not require that the out-of-district placement conform to the statutory requirements of an IEP. Id. at 13, 114 S.Ct. 361 (noting that the requirement that an IEP must be designed by a representative of the local educational agency ”do[es] not make sense in the context of a parental placement”).

. At oral argument in this case, counsel for the parents suggested that the use of the word “kindergarten” in the above-quoted language was a typographical error. This argument was not made in appellants’ briefs and we are reluctant to infer that a key portion of the ALJ’s opinion — the only portion discussing what would be required in 2007-08 to give T.W. a FAPE — was a mere typographical error.