NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3035
_____

J.L.,
by and through his Guardian, Holly M.
of East Stroudsburg, PA,
Appellant

v.

EAST STROUDSBURG AREA SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:20-cv-00605)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 29, 2024
_____

Before:  HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed: November 13, 2024)
_____

OPINION*
_____

PHIPPS, *Circuit Judge*.

In this case, a student with disabilities claims that he was denied his right to a free

appropriate public education because one of his two guardians did not participate in the

decision to extend his suspension from school, part of which he served through attendance

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

at an intermediate unit. For a student to have a claim for such a procedural violation under the Individuals with Disabilities Education Act, the 'IDEA' for short, the guardian's participation rights must have been "significantly impeded." 20 U.S.C. § 1415(f)(3)(E)(ii)(II). On administrative review of the student's claim, the hearing officer, whose factual findings federal courts treat as *prima facie* correct, *see D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010), determined that the other guardian, the spouse of the complaining guardian, consented to the extension and that the complaining guardian was otherwise involved in the decision-making process regarding the student's placement. Relying on those findings, the District Court dismissed the student's claim. *See id*. at 565 (citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007)). For the reasons below, we will affirm the District Court's judgment.

## I. BACKGROUND

On May 23, 2018, J.L., then a fifteen-year-old student in the East Stroudsburg Area School District with autism spectrum disorder, ADHD, and a specific learning disability in listening comprehension, brought a three-inch pocketknife to school. The school district responded by suspending J.L. from regular classes for forty-five school days – the maximum permitted by the IDEA, *see* 20 U.S.C. § 1415(k)(1)(G) – and placing him in a cyber program for the remainder of the school year. The forty-five-day suspension carried over into the next school year, which J.L. started at Colonial Academy – an intermediate unit. Before the suspension expired, the high school principal met with J.L.'s grandfather, who was one of J.L.'s guardians, and they agreed that, to minimize disruption to J.L., he would remain at Colonial Academy until the end of the first quarter.

The school district did not provide written notice of that meeting to J.L.'s other guardian, his grandmother. Nor did the school district provide an opportunity for J.L.'s

2

grandmother to object to the agreement between the principal and her husband. *See id.* § 1415(b)(3) (requiring notice prior to a change in placement); *id.* § 1415(b)(6) (requiring schools to provide parents an opportunity to present complaints pertaining to their child's educational placement); *Y.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 198 (3d Cir. 2021) (recognizing these and other IDEA procedural requirements); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 70 (3d Cir. 2010) (identifying the notice requirement); 34 C.F.R. § 300.532(a) (allowing parents to initiate a hearing when they disagree with a change in placement); 20 U.S.C. § 1401(23) (including grandparent-guardians in the definition of 'parents'). True to the agreement, J.L. remained at Colonial Academy for an additional sixteen school days, until the end of the quarter, before returning to the high school.

Less than three weeks after his enrollment at East Stroudsburg High School South, J.L. expressed a desire to kill another student, and he was expelled from the school for one year. His grandparents then invoked the administrative challenge mechanism permitted by the IDEA by filing a due process complaint on his behalf. *See* 20 U.S.C. § 1415(b)(6), (k)(3), (f)(1). That due process complaint challenged J.L.'s expulsion and several preceding events, including the lack of notice and hearing for the sixteen-day extension of his time at Colonial Academy. According to the due process complaint, the procedural violations with respect to the extended suspension resulted in a denial of a FAPE – the free appropriate public education guaranteed by the IDEA. *See id.* § 1412(a)(1).

To adjudicate the due process complaint, a hearing officer held a two-day hearing. After considering twenty-five exhibits and observing the testimony of five witnesses – including the grandmother, grandfather, and school district staff – the hearing officer issued a written decision rejecting J.L.'s denial-of-FAPE claim.

Among other things, the hearing officer determined that the lack of notice and hearing for the sixteen-day extension of the suspension did not seriously deprive the grandmother of participation in the decision-making process regarding the free appropriate public education due J.L. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 274 (3d Cir. 2012). In reaching that conclusion, the hearing officer found that the grandmother had approved the initial placement in the cyber program as well as the transfer to Colonial Academy to begin the new school year. In particular, the hearing officer determined that the grandmother had met with J.L.'s Individualized Education Program team twice after the pocketknife incident – once on May 31, 2018, to determine whether that episode was a manifestation of J.L.'s disabilities and again on June 7, 2018, to transfer him to Colonial Academy for the beginning of the next school year. The hearing officer also found that the grandmother participated in a third IEP team meeting on November 8, 2018, at which she agreed with the decision to return J.L. to East Stroudsburg High School South.[1]

The grandmother then challenged the hearing officer's decision through a civil action in the District Court. *See* 20 U.S.C. § 1415(i)(2)(A), (i)(3)(A) (conferring jurisdiction on federal district courts to hear civil actions filed by parties aggrieved by the decisions of hearing officers under the IDEA); *J.M. v. Summit City Bd. of Educ.*, 39 F.4th 126, 136 (3d Cir. 2022). In resolving cross motions for judgment on the administrative record, which are similar in many respects to summary-judgment motions, *see B.S.M. v. Upper Darby Sch. Dist.*, 103 F.4th 956, 962 (3d Cir. 2024),[2] district courts apply a

---

[1] The hearing officer also made an adverse credibility finding with respect to the grandmother and further determined that the grandmother approved of the extension at Colonial Academy and, contrary to her assertions, did not object to that extension.

[2] The essential differences between an IDEA-specific motion on the administrative record and the summary judgment standard are that (i) the burden of persuasion rests with the party challenging the administrative decision, *see Ridley*, 680 F.3d at 270; (ii) inferences need not be drawn in favor of a non-moving party on a motion for judgment on the administrative record, *see Sebastian M. v. King Philip Reg'l Sch. Dist.*, 685 F.3d 79, 84–

"modified *de novo*" standard of review, *J.M.*, 39 F.4th at 139. Under that standard, a court "bases its own decision on the preponderance of the evidence," *id.*, but gives "due weight" to the hearing officer's factual findings by considering them to be *prima facie* correct, *id.* (quoting *Ridley*, 680 F.3d at 268); *see also D.S.*, 602 F.3d at 564 (explaining that a district court treats administrative factual rulings as *prima facie* correct (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009))); *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012) (summarizing standard of review to be applied in IDEA cases).[3]

Ultimately, the District Court upheld the hearing officer's determination with respect to the sixteen-day extension for two reasons. First, the extension at Colonial Academy did not amount to a change in placement requiring notice and a hearing, *cf.* 20 U.S.C. § 1415(b)(3) (requiring notice when schools contemplate a change in educational placement); *id.* § 1415(k)(3) (providing right to request a hearing for decisions regarding placement following student misconduct); *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 215, 217 (3d Cir. 2015) (explaining that the phrase 'change in educational placement' refers to a significant effect on "the child's learning experience" and demands a "fact specific" inquiry (quoting *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 153

85 (1st Cir. 2012) (citing *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)); and (iii) a genuine dispute of material fact does not prevent entry of judgment, *see H.W. ex rel. Jennie W v. Comal Indep. Sch. Dist.*, 32 F.4th 454, 464 (5th Cir. 2022) (citing *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016)); *Sebastian M.*, 685 F.3d at 85 (citing *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891–92 (9th Cir. 1995)).

[3] Courts afford even more deference to a hearing officer's credibility determinations. *See J.M.*, 39 F.4th at 145 (explaining that a reviewing court must follow a hearing officer's credibility determinations "unless the nontestimonial, extrinsic evidence in the record would justify a contrary conclusion" (quoting *D.K.*, 696 F.3d at 243)); *Ridley*, 680 F.3d at 268 (explaining that a reviewing court may not deviate from the hearing officer's factual findings absent explanation (citing *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003))).

(3d Cir. 1984))).  And second, even if notice and a hearing were required, their absence did not significantly impede the grandmother's participation in J.L.'s public education.  *See C.H.*, 606 F.3d at 66–67 (citations omitted); *D.S.*, 602 F.3d at 565.

Through a timely notice of appeal of that final decision, the grandmother, on J.L.'s behalf, invoked this Court's appellate jurisdiction and now disputes both of those conclusions.  *See* 28 U.S.C. § 1291.

## II. DISCUSSION

Of the two issues presented on appeal, the first presents a novel question, but the second does not.  And this case may be resolved on the second issue alone.  Thus, by assuming *arguendo* that notice and a hearing regarding J.L.'s sixteen-day extension at Colonial Academy were required, the question becomes whether the absence of those processes resulted in the grandmother being significantly impeded from participating in "the decisionmaking process regarding the provision of a free appropriate public education" such that J.L was denied a FAPE.  20 U.S.C. § 1415(f)(3)(E)(ii).

Because of the circumstance-specific nature of parental involvement in educational decisions, a parent's nonparticipation in one decision due to a procedural inadequacy is not automatically a significant impediment to that parent's participation in the *overall* decision-making process.  *See C.H.*, 606 F.3d at 70–71 (holding that a school district's failure to provide written notice to a parent prior to an IEP meeting that the parent subsequently missed did not impair the parent's ability to participate in educational decisions).  And here, the District Court did not clearly err in accepting the hearing officer's *prima-facie-*correct findings with respect to the minimal degree to which the grandmother's participation in the decision-making process was compromised.  *See Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993) (explaining clear error review applies to a district

6

court's decision to adhere to a hearing officer's factual determinations (citing *Jefferson Cnty. Bd. of Educ. v. Breen*, 853 F.2d 853, 857 (11th Cir. 1988))). As determined by the hearing officer, the grandmother's husband, who was also J.L.'s guardian, actively participated in the decision to extend J.L.'s placement at Colonial Academy – by agreeing to it, no less. Moreover, as explained in the hearing officer's findings, the grandmother was otherwise involved in the decision-making process for J.L.'s public education both before and after the sixteen-day extension. Thus, the District Court correctly held that on these facts, in which the grandfather as guardian consented to the extension and the grandmother as guardian was otherwise involved in the decision-making process, the grandmother was not significantly impeded from participating in the decision-making process such that J.L. was denied a FAPE.

### III. CONCLUSION

For the forgoing reasons, we will affirm the judgment of the District Court.