# United States Court of Appeals
## For the First Circuit

No. 11-1489

SEBASTIAN M.; LISA M., as Legal Guardian and Parent;
MICHAEL M., as Legal Guardian and Parent,

Plaintiffs, Appellants,

v.

KING PHILIP REGIONAL SCHOOL DISTRICT;
MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION,
and its Bureau of Special Education Appeals,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin and Lipez, Circuit Judges,
and Smith,[*] District Judge.

D. Luray Wallace for appellants.
Regina Williams Tate for appellee King Philip Regional School District.
Amy Spector for appellee Massachusetts Department of Elementary and Secondary Education.

July 16, 2012

[*] Of the District of Rhode Island, sitting by designation.

**LIPEZ, Circuit Judge**. This case involves a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1491, which requires that students with disabilities receive a free appropriate public education ("FAPE") in the least restrictive environment possible. See 20 U.S.C. § 1412(a)(1), (5). Sebastian M. is a disabled young man with mental retardation who was enrolled in a special education program run by the King Philip Regional School District. When he was twenty years old, his parents became dissatisfied with his public education and placed him in a private residential facility. An administrative hearing officer determined that Sebastian's parents were not entitled to recover the costs of Sebastian's private education, and the federal district court upheld that decision. See Sebastian M. v. King Philip Reg'l Sch. Dist., 774 F. Supp. 2d 393, 408-09 (D. Mass. 2011). We affirm.

**I.**

We set forth the background facts as supportably found by the district court. See Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 21 (1st Cir. 2008); C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 282 (1st Cir. 2008). Sebastian was born in 1986 and began receiving special education services when he was three years old. These services continued after he entered the King Philip public school system, which each year developed an individualized education program ("IEP") for him,

-2-

as required by the IDEA.  See 20 U.S.C. § 1412(a)(4).  In 1998, when Sebastian was twelve, he was transferred to the Bi-County Educational Collaborative ("BICO"), an organization established pursuant to Mass. Gen. Laws ch. 40, § 4E, to attend to special needs students from several public school districts.  The King Philip school system remained responsible for Sebastian's education throughout his time at BICO and continued to develop his annual IEPs in consultation with his parents and educators.  At BICO, Sebastian received vocational training through the Work Lab I, Work Lab II, and Life Roles Transition programs.  His work experiences included assembling pizza boxes at a restaurant, performing light janitorial work, stamping paychecks, and helping out at an autobody shop.  Sebastian also received instruction in basic mathematics and personal hygiene, and he learned to use the Dial a Ride program to reach his work sites.[1]

In 1998, Sebastian's first year at BICO, he displayed "significant difficulties with several aspects of fine motor functioning," according to an occupational therapy assessment.  A reevaluation conducted in the spring of 2002, when Sebastian was sixteen, indicated that his "active upper extremity range of motion and strength [we]re both within functional limits" and that he was "progressing nicely" with typing skills.  However, Sebastian

---

[1] Dial a Ride is a community-based public transportation service for elderly and disabled passengers.

continued to demonstrate visual-motor and visual-spatial deficits, as well as deficits in receptive language skills. His language arts abilities were equivalent to a first- or second-grade level, and he operated at a third-grade level in mathematics.

Progress reports for the 2002-2003, 2003-2004, and 2004-2005 school years showed that Sebastian was making steady progress pursuant to his IEPs. For example, in November 2003, Sebastian was able to decode words at a fourth-grade level, and could write a five- or six-sentence paragraph with the use of a graphic organizer and teacher assistance. He was then seventeen years old. By June 2004, Sebastian was able to use inferential logic, with some support, to predict outcomes and solve problems, and he was "show[ing] improvement in his ability to sound out long, unfamiliar words." He also was making strides in "counting out his [lunch] money, and figuring out what change he should receive."

Evaluations conducted in May 2005 noted that Sebastian had "a difficult time with both body and spatial awareness" and that his "visual tracking of a moving manipulative [was] very poor." However, Sebastian was comfortable using public transportation to reach his work sites, scored at a fourth-grade level in word recognition and computational skills, and had learned to identify thirty-nine of forty "safety signs," such as "wet paint" and "fire alarm." In addition, he had "demonstrated slight

gains over previous testing" in receptive language skills and had made a "two year jump in pragmatic language skills."

Despite these gains, Sebastian's parents became frustrated by what they perceived as poor communication from BICO, and they questioned why Sebastian was unable to replicate at home the achievements described in his progress reports. They also worried that Sebastian was not developing independent living skills and that his increasingly aggressive behavior at home was attributable to inadequate supervision at BICO.

After the 2004-2005 academic year, Sebastian's parents began pressing the King Philip school system to remove Sebastian from BICO and place him in a year-round residential program. Beginning in June 2005, they rejected a series of IEPs proposed by the school system that offered alternative accommodations, such as increased emphasis on independent living skills, weekly occupational therapy sessions, and after-school activities. When negotiations broke down in December 2006, Sebastian's parents notified the school system that they intended to unilaterally withdraw Sebastian from BICO. On January 2, 2007, Sebastian began attending the Cardinal Cushing School, a private residential facility. Sebastian's parents then invoked their statutory right to an administrative due process hearing before the Massachusetts Bureau of Special Education Appeals ("BSEA"), see 20 U.S.C. § 1415(f)(1)(A), seeking reimbursement for the costs of Sebastian's

private education, as well as compensatory services they claimed were necessitated by the failures of the King Philip school system. The school system answered that Sebastian's parents were not entitled to the relief sought, because its proposed IEPs had offered Sebastian a FAPE in the least restrictive environment possible, as required by the IDEA.

A BSEA hearing was held over six days between September 18, 2008, and January 8, 2009. The administrative hearing officer compiled a comprehensive record describing the nature of Sebastian's disabilities and documenting his educational history. On January 13, 2009, the hearing officer issued a lengthy decision largely favorable to the school system. In the hearing officer's view, the IEPs proposed by the school system complied with the IDEA insofar as they were "reasonably calculated to permit [Sebastian] to make meaningful progress." As a result, the school system had no financial responsibility for Sebastian's private education. The hearing officer explained, however, that the school system had not consistently implemented Sebastian's previous IEPs and had, on "more than an occasional number of times," assigned him tasks that were too difficult for him to complete. Accordingly, the school system had to offer Sebastian limited compensatory services in the form of updated evaluations and a transition plan to guide his eventual departure from the Cardinal Cushing School.

Sebastian and his parents sought judicial review of the hearing officer's decision by filing suit in the United States District Court for the District of Massachusetts, see 20 U.S.C. § 1415(i)(2)(A), naming as defendants the King Philip school system and the Massachusetts Department of Elementary and Secondary Education. The school system did not appeal. After both sides filed motions for summary judgment, the district court ruled against Sebastian and his parents. See Sebastian M., 774 F. Supp. 2d at 408-09. Upholding the hearing officer's decision, the district court noted that Sebastian had made meaningful progress at BICO under his previous IEPs and likely would have continued to make such progress if the proposed IEPs had been implemented. See id. at 408. This appeal followed.

**II.**

A state receiving federal funds under the IDEA must offer every disabled child within its jurisdiction a FAPE in the least restrictive environment possible. See 20 U.S.C. § 1412(a)(1), (5). If a state is unable to provide a disabled child with a FAPE through a public school placement, it may be obliged to subsidize the child in a private program. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012); C.G., 513 F.3d at 284.

"The 'primary vehicle' for delivery of a FAPE is an IEP." D.B., 675 F.3d at 34 (quoting Lessard, 518 F.3d at 23). An IEP must be custom-tailored to suit a particular child, see Bd. of

Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201 (1982), and must include, "at a bare minimum, the child's present level of educational attainment, the short- and long-term goals for his or her education, objective criteria with which to measure progress toward those goals, and the specific services to be offered," Lessard, 518 F.3d at 23. However, an IEP need not be designed to furnish a disabled child with the maximum educational benefit possible. See D.B., 675 F.3d at 34. To comply with the IDEA, an IEP need only be "reasonably calculated to confer a meaningful educational benefit." Id.

Parents who are dissatisfied with their child's IEP may demand an administrative due process hearing before a designated state educational agency. See 20 U.S.C. § 1415(f). In this case, that agency is the BSEA. From there, an appeal of the administrative hearing officer's final decision may be taken to either a federal or state court of competent jurisdiction. See id. § 1415(i)(2)(A); Lessard, 518 F.3d at 24.

We recently articulated the different standards that apply to a federal district court's review of a hearing officer's decision and our review of the district court's decision:

> A district court reviews the administrative record, which may be supplemented by additional evidence from the parties, and makes an independent ruling based on the preponderance of the evidence. However, that independence is tempered by the requirement that the court give due weight to the hearing officer's findings. As a result, a district

> court's review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard. We have characterized this intermediate level of review as one of involved oversight.
>
> Our review of the district court's order is more traditional. We examine the record as a whole and review the district court's answers to questions of law de novo and its findings of fact for clear error. Whether an IEP is adequate is a mixed question of law and fact, and our degree of deference depends on whether a particular determination is dominated by law or fact.

D.B., 675 F.3d at 35-36 (citations, internal quotation marks, and brackets omitted).

The application of these standards in the context of a motion for summary judgment adds a layer of complexity. See Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 112-13 (D. Mass. 1999). As in other administrative appeals, a motion for summary judgment in an IDEA case is simply a vehicle for deciding the relevant issues, and the non-moving party is not entitled to the usual inferences in its favor. See Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005); Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995) ("Though the parties may call the procedure a 'motion for summary judgment' . . . the procedure is in substance an appeal from an administrative determination, not a summary judgment."); cf. Scibelli v. Prudential Ins. Co. of Am., 666 F.3d 32, 40 (1st Cir. 2012) (describing summary judgment in context of ERISA case).

Nor does the presence of disputed issues of fact preclude the award of summary judgment. See Capistrano, 59 F.3d at 891-92.

However, "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993); see also Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988) ("[T]he district court's authority under [the IDEA] to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggest less deference than is conventional [in other administrative appeals]."). As a result, in an IDEA case, a district court "essentially conduct[s] a bench trial based on a stipulated record," Ojai, 4 F.3d at 1472, but must nevertheless give due deference to the findings of the administrative hearing officer, see id. at 1471-72. We then review the district court's ruling as we would following any other bench trial.

**III.**

The primary issue raised on appeal is whether the IEPs proposed by the King Philip school system complied with the IDEA. Sebastian and his parents challenge the district court's judgment by focusing on two alleged errors by the hearing officer undetected by the district court: (1) that the hearing officer did not give

sufficient weight to their expert witnesses' testimony that the proposed IEPs were unsuitable for Sebastian; and (2) that the hearing officer's findings misstated the services available to Sebastian at the Cardinal Cushing School, downplaying, for example, the opportunities there for off-site vocational training. In light of these errors, they argue, the district court should not have upheld the hearing officer's ruling.

## A. The Expert Witnesses

Two expert witnesses testified at the due process hearing on behalf of Sebastian and his parents: Dr. Anne Marie Lasoski, a neuropsychologist, and Marsha Stevens, an educational consultant. Lasoski evaluated Sebastian in 1999 and 2006. In total, she spent approximately eight hours with Sebastian. She also reviewed his academic records and observed his performance at BICO on one occasion. Lasoski did not, however, speak with Sebastian's teachers or review his schoolwork. Stevens spent between ten and twelve hours with Sebastian, starting after he enrolled at the Cardinal Cushing School. However, she never conducted a formal assessment of him or observed him at BICO. Both Lasoski and Stevens expressed the view that the IEPs proposed by the King Philip school system were inappropriate for Sebastian. In particular, Lasoski testified that the proposed IEPs failed to emphasize the development of independent living skills. Stevens

testified that the IEPs were inadequate as to vocational training, social skills, and "functional academics."

The hearing officer gave little weight to this testimony. Instead, she credited the testimony of educators who had worked directly with Sebastian at BICO and observed his daily progress there over a number of years. All of these educators testified that the proposed IEPs offered an appropriate combination of services designed to permit Sebastian to achieve meaningful educational progress, including counseling services, occupational therapy, social skills training, and vocational training.

The valuation of expert testimony is precisely the sort of first-instance administrative determination that is entitled to judicial deference by the district court. See J.E.W. ex rel. J.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 446 (9th Cir. 2010); Strawn v. Mo. State Bd. of Educ., 210 F.3d 954, 958 (8th Cir. 2000); cf. Lessard, 518 F.3d at 24 ("Judges are not trained pedagogues, and they must accord deference to the state agency's application of its specialized knowledge."). The testimony offered by Lasoski and Stevens was controverted by Sebastian's educators, who interacted with him regularly. The administrative record makes clear that Lasoski and Stevens spent relatively little time with Sebastian. Moreover, Lasoski never consulted Sebastian's teachers or reviewed his schoolwork. Stevens never formally evaluated Sebastian or observed him at BICO. Given this record, it was

-12-

entirely proper for the district court to give due deference to the hearing officer's weighing of the testimony offered by Lasoski and Stevens. There was nothing clearly erroneous in that determination.

**B.  The Services Offered by the Cardinal Cushing School**

The hearing officer found that the Cardinal Cushing School was "too restrictive a program" for Sebastian. She added that the school "has only one limited off-site vocational experience," and has not "provided data collection for this off-site work experience." In addition, she found that Sebastian did not have an opportunity to use public transportation at the Cardinal Cushing School.

Sebastian and his parents contend that these findings are inconsistent with evidence in the administrative record. In making this argument, they miss a larger point. The Supreme Court has explained that a state must subsidize the costs of a disabled child's private education only if the private school placement is adequate <u>and</u> the public school placement is inadequate. <u>See</u> <u>Florence Cnty. Sch. Dist. Four</u> v. <u>Carter ex rel. Carter</u>, 510 U.S. 7, 15 (1993); <u>see</u> <u>also</u> <u>Sch. Comm. of Town of Burlington</u> v. <u>Dep't of Educ. of Mass.</u>, 471 U.S. 359, 369-70 (1985); <u>Mr. I. ex rel. L.I.</u> v. <u>Me. Sch. Admin. Dist. No. 55</u>, 480 F.3d 1, 23 (1st Cir. 2007). Having discounted the testimony offered by Lasoski and Stevens that the IEPs proposed by the King Philip school system were unsuitable

-13-

for Sebastian, the hearing officer embraced the contrary view espoused by Sebastian's educators that the proposed IEPs complied with the IDEA. We have already decided that the district court did not err in accepting this evaluation of expert testimony by the hearing officer. This evaluation, in turn, was critical to the hearing officer's finding, amply supported by the administrative record, that Sebastian "made progress commensurate with his ability" under his previous IEPs and likely "would have made more progress if the [King Philip school system] had been permitted . . . to implement the additional goals and objectives and services proposed on the rejected IEPs." See D.B., 675 F.3d at 38 ("It . . . was not error to conclude prospectively that, since [the student's] previous IEPs had conferred meaningful educational benefits, the [proposed] IEP was reasonably calculated to do the same, having kept in place, and even supplemented, the services offered by the previous IEPs.").

Therefore, Sebastian's public school placement at BICO was adequate, and the services available to him at the Cardinal Cushing School -- the alternative placement chosen by his parents -- were immaterial to the outcome of this case. Even if the hearing officer's findings as to those services were inconsistent with the record evidence (and we do not suggest that they were), there was no reversible error.

**IV.**

As noted above, a district court must independently examine the administrative record in reviewing a hearing officer's ruling.  See <u>D.B.</u>, 675 F.3d at 35-36.  Sebastian and his parents argue that the district court committed a legal error by failing to discharge this responsibility and instead relying "almost exclusively" on the hearing officer's factual findings.  They note that the district court cited extensively to the hearing officer's findings in laying out the background of this case.

There is no basis for this claim of error.  Because "[d]etermining the adequacy of an IEP is a fact-intensive exercise," <u>Lenn</u> v. <u>Portland Sch. Comm.</u>, 998 F.2d 1083, 1087 (1st Cir. 1993), the district court described the background of this case in considerable detail.  In so doing, it cited the hearing officer's findings.  However, the district court also referred throughout its decision to the administrative record.  See, <u>e.g.</u>, <u>Sebastian M.</u>, 774 F. Supp. 2d at 406 ("[T]he administrative record was comprehensive and provided a more-than-sufficient basis for the Hearing Officer's findings."); <u>id.</u> at 407 ("[T]he administrative record makes clear that transition planning was discussed at all of Sebastian's team meetings."); <u>id.</u> ("[T]he record indicates that Sebastian did, in fact, make some progress.").  The district court fulfilled its responsibility to review the administrative record in reviewing the hearing officer's ruling.

The judgment of the district court is <u>affirmed</u>. Each party shall bear its own costs.

<u>So ordered</u>.