# United States Court of Appeals
## For the First Circuit

---

Nos. 21-1505, 21-1535, 21-1539

JOHN DOE; JANE DOE; DAVID DOE,

Plaintiffs, Appellees, Cross-Appellants,

v.

NEWTON PUBLIC SCHOOLS; BUREAU OF SPECIAL EDUCATION APPEALS,

Defendants, Appellants, Cross-Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

---

Eileen M. Hagerty, with whom Alicia M.P. Warren and Kotin, Crabtree & Strong, LLP were on brief, for appellees/cross-appellants.

Jill Murray Grady, with whom Carolyn A. Weisman and City of Newton Law Department were on brief, for appellant/cross-appellee Newton Public Schools.

LaRonica K. Lightfoot, Assistant Attorney General, with whom Maura Healey, Attorney General, was on brief, for appellant/cross-appellee Bureau of Special Education Appeals.

---

September 2, 2022

---

**BARRON**, **Chief Judge**.  These appeals concern a civil action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., that two residents of Newton, Massachusetts, John and Jane Doe, and their child, David, brought in the District of Massachusetts.  The plaintiffs' action alleges that the Massachusetts Bureau of Special Education Appeals ("BSEA") erred in rejecting their administrative complaint that the Newton Public Schools ("Newton") violated the IDEA by failing to provide David with a "free appropriate public education," 20 U.S.C. § 1412(a)(1), also known as a "FAPE."  They thus seek reimbursement from Newton for the costs that they incurred in sending David to a private residential school in Connecticut, Franklin Academy ("Franklin").

The District Court agreed with the Does, granted judgment to them on their claim that Newton had denied David a FAPE in violation of the IDEA, and ordered Newton to reimburse them for expenses that they incurred in placing him at Franklin. Newton and the BSEA now bring appeals to challenge that ruling. The Does also cross-appeal, as they take issue with the District Court's decision to exclude boarding- and travel-related expenses from the order of reimbursement.  We affirm the District Court's rulings across the board.

The IDEA provides states federal funds "in exchange for a commitment" to "furnish . . . all children with certain physical or intellectual disabilities" with a FAPE.  Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 748 (2017).  A FAPE comprises "special education and related services" that are, among other things, "provided at public expense" and meet the educational standards of the state that receives funds pursuant to the IDEA.  20 U.S.C. § 1401(9); see Johnson v. Boston Pub. Schs., 906 F.3d 182, 185 (1st Cir. 2018).  The IDEA defines "related services" to include such "psychological services . . . as may be required to assist a child with a disability to benefit from special education."  20 U.S.C. § 1401(26)(A).

Massachusetts has accepted federal funds under the IDEA, and it has conferred upon local school districts in the state, such as Newton, the responsibility to provide eligible students with a FAPE.  See Mass. Gen. Laws ch. 71B, §§ 1, 12; 603 Mass. Code Regs. 28.03.  The primary means through which school districts must deliver the "special education and related services" necessary to provide such children with a FAPE is an Individualized Education Program ("IEP").  G.D. ex rel. Jeffrey D. v. Swampscott Pub. Schs., 27 F.4th 1, 5 (1st Cir. 2022) (internal quotation omitted).

An IEP is "a comprehensive statement of the educational needs of a [student] and the specially designed instruction and related services to be employed to meet those needs." Sch. Com. of Burlington v. Dep't of Educ., 471 U.S. 359, 368 (1985). The IEP must be developed through a "collaborative process that involves" the members of the child's "IEP team," including the student's parents, teachers, and school officials. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35 (1st Cir. 2012); see also Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 994 (2017). To "ensure the continued adequacy of a child's IEP," the IEP team must meet at least annually to reevaluate the special education and related services being offered by the school district. Esposito, 675 F.3d at 35; 20 U.S.C. § 1414(d). If a school district is "unable to furnish" the services necessary to provide an eligible child a FAPE "through a public school placement, it may be obliged to subsidize the child['s placement] in a private program." C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 284 (1st Cir. 2008).

Parents are free to consent to or reject the IEP that is offered by the school district. But, if the IEP is "reasonably calculated" at that time "to enable [the] child to make progress appropriate in light of the child's circumstances," then the IEP suffices to satisfy the school district's substantive obligation

- 4 -

under the IDEA to provide that child with a FAPE.  Endrew F., 137 S. Ct. at 999.

The IDEA also expresses a preference for educating eligible students in the "[l]east restrictive environment."  20 U.S.C. § 1412(a)(5).  We addressed this requirement, often referred to as the "LRE requirement," in Lenn v. Portland School Committee, while determining whether an IEP that a local school district proposed that would have placed an eligible child in a day program after his parents had removed him to a private residential school was "reasonably calculated" to provide that child with a FAPE.  998 F.2d 1083, 1086 (1st Cir. 1993).  In concluding that the proposed IEP was so calculated, we explained that, given the LRE requirement, an eligible child "'who would make educational progress in a day program' is not entitled to a residential placement even if the latter 'would more nearly enable the child to reach his or her full potential.'"  Id. (quoting Abrahamson v. Hershman, 701 F.2d 223, 227 (1st Cir. 1983)).

If the IEP process fails to produce an IEP upon which a school district and the child's parents can agree, the parents "may challenge either the school [district's] handling of the IEP process or the substantive adequacy of the IEP itself" -- that is, whether the IEP is reasonably calculated to enable the child to make progress in light of their circumstances -- "by demanding an administrative due process hearing before a designated state

- 5 -

educational agency." Esposito, 675 F.3d at 35; 20 U.S.C. § 1415(f)(1)(A). The entity that conducts such hearings for Massachusetts is the BSEA. Mass. Gen. Laws ch. 71B, § 2A(a); 603 Mass. Code Regs. 28.08(3)-(6).

If, following such a hearing, the BSEA renders a decision adverse to either the parents or the school district, then the aggrieved party may "bring a civil action challenging the outcome . . . in either state or federal court." Johnson, 906 F.3d at 186; 20 U.S.C. § 1415(i)(2)(A). The court in which such an action is brought may consider not only the "records of the administrative proceedings" but also "additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(i)-(ii).

Parents may place their child in a private educational program while their IDEA claims are being adjudicated "without the consent of or referral by the public agency." 20 U.S.C. § 1412(a)(10)(C)(ii). "But, the parents make that decision 'at their own financial risk,'" G.D., 27 F.4th at 6 (quoting Burlington, 471 U.S. at 373-74), pending the outcome of their IDEA action. If the court adjudicating that action concludes that the school district "violated [the] IDEA and that the [parents'] private school placement was proper under the" IDEA, then the court may order appropriate relief, including that the school district reimburse the parents of the child for expenses that the parents

incurred due to that placement.  <u>Florence Cty. Sch. Dist. Four</u> v. <u>Cater</u>, 510 U.S. 7, 15 (1993).

**B.**

**1.**

David Doe attended Newton Public Schools starting in kindergarten.  Newton determined during David's kindergarten year that he was eligible for special education services under the IDEA.

Newton later identified David's primary disability as an autism spectrum disorder.  It determined that his secondary disability was a generalized emotional disorder.

David continued to attend and receive special education services from Newton during the years that he spent in grammar and middle school in Newton's public school system.  And, about a decade after he had begun kindergarten in that system, he began high school in it, as a ninth grader at Newton North High School ("Newton North").

Toward the end of David's ninth-grade year at Newton North, in March 2016, Newton proposed an IEP for David, which we will refer to as the March 2016 IEP.  The IEP provided for consultation by a speech language pathologist in social pragmatics once a month for 30 minutes, and services from a speech language pathologist once a week for 15 minutes.  The proposed IEP also provided for various testing, classroom, and assignment-related accommodations.  The Does consented to the March 2016 IEP in full.

Then, during David's tenth-grade year at Newton North, in January 2017, he reported to his Latin teacher that he was "drowning," was "getting little sleep," and was "often sick." David attributed these difficulties to his course load, which included two Honors-level classes.

The Latin teacher, as well as other teachers at Newton North, expressed concerns about David to members of his IEP team. Collectively, the concerns pertained to David's performance in the classroom, including his grades, and his emotional presentation.

On March 8, 2017, David's IEP team met to discuss the concerns that the teachers had raised and David's progress to that point under his IEP. David was informed at this meeting that his teachers would not recommend him for honors classes, a position that -- in light of David's deteriorating emotional state -- his parents had supported. This news caused David to become quite upset.

Shortly after this meeting, Newton proposed a new IEP for David. The new IEP that Newton proposed, which we will refer to as the March 2017 IEP, would continue to provide David with the services that the March 2016 IEP had provided him, along with some additional speech and social supports. For several months, while the Does reconsidered David's placement at Newton North, they neither accepted nor rejected that IEP. As a result, David continued receiving services under the March 2016 IEP.

That spring, as the end of David's tenth-grade year at Newton North approached, David told his parents that he planned to kill himself by jumping out of a fourth-floor window at Newton North. The Does sought an emergency meeting with David's guidance counselor, who is a member of David's IEP team, and expressed their concern for David's safety at the school. David was evaluated at that time and diagnosed with major depressive disorder, although the doctor who treated him did not find him to be at imminent risk of self-harm. The Does thereafter found David a private therapist.

Later that tenth-grade spring, David ran for a leadership position in Newton North's Model United Nations Club -- a group in which he had been active. He was not selected, however, and his distress increased greatly thereafter. Moreover, in June of that year, a group of students accosted and threatened David for reporting a potential instance of cheating on an online study forum.

David's IEP team reconvened on June 21, 2017, to discuss the March 2017 IEP that the Does had not yet accepted or rejected. As a result of that meeting, Newton amended the proposed March 2017 IEP to add academic support sessions with a special education teacher, which David's educators hoped would help David complete his academic assignments. The amended plan did not include counseling or therapy services.

Sometime during the summer after David's tenth-grade year, his parents discovered a large bottle of Tylenol in his bedroom. Upon learning from David that he had kept the bottle in his bedroom because he was contemplating suicide, his parents brought him to Dr. Michelle Palumbo, a psychiatrist at the Lurie Center for Autism at Massachusetts General Hospital. Dr. Palumbo concluded from her evaluation that David presented with "symptoms of major depressive disorder, severe with active suicidal ideation and a history of suicidality ideation with plan," and that he required immediate hospitalization.

David was admitted to North Shore Medical Center, where he was held in a locked pediatric ward for twelve days. He thereafter was admitted to McLean Hospital ("McLean"), where he spent approximately two weeks in the hospital's Adolescent Acute Residential Treatment Program.

Around the time of David's first hospitalization, David's parents sent an email to two members of the Newton IEP team in which the parents informed the two team members that David had been hospitalized, was experiencing frequent suicidal ideation, and was adamantly opposed to enrolling at Newton North in the fall. Then, on August 18, 2017, before David was to begin his eleventh-grade year at Newton North, the Does informed Newton that they would not consent to David's receipt of services under the March 2017 IEP, even as it had been revised in June.

- 10 -

The Does indicated at that time that David required "an appropriate therapeutic placement for his continued schooling." They then attended a meeting with David's IEP team to discuss next steps on August 31.

In preparation for the meeting, the Does provided Newton with a letter from David's treating clinicians at McLean Hospital, Dr. Peter Adams, a child psychiatrist, and Catherine Lopes, a social worker. A portion of that letter stated:

> Our recommendation would be to strongly consider and anticipate that [David] will need significant therapeutic school supports. [David] would benefit from a program with experience in working with teens with high functioning Autism spectrum disorder and ongoing mood crises. [David] will need daily mental health check-ins and therapy support. [David] will need to have access to staff and therapeutic supports in order to develop flexibility of thinking, and combat his current thought rigidity that: school performance is the only predictor of a life worth living. Secondarily, [David] would benefit from learning healthy coping skills to manage mood crisis, rejection and unwanted feelings. We strongly recommend [David] be considered for services offered at a therapeutic school given his ongoing emotional difficulties, coupled with suicidal thinking, which will continue to require intensive interventions.

Around this time, and prior to the upcoming IEP team meeting, the Does also began exploring a number of day and residential school placements for David that could provide him with the kind of therapeutic support that the clinicians at McLean had recommended.

At the August 31, 2017, meeting, Newton proposed another IEP for David's eleventh-grade year at Newton North. We will refer to this IEP as the August 2017 IEP.

The new IEP would place David in "LINKS," which is an educational program that is offered at Newton North that would give David access to a social worker for counseling on a daily as-needed basis as well as two set counseling sessions per week. Under the August 2017 IEP, David also would receive increased speech and language services, and academic support.

The Does informed Newton that they would reject the August 2017 IEP and unilaterally place David at Franklin, a private, residential school in Connecticut. They also requested that Newton reimburse them for the expenses associated with his enrollment at Franklin.

The Does did not inform Newton that they had already accepted an offer from Franklin on David's behalf at the time of the August 31 IEP meeting. Days later, David enrolled at Franklin for his eleventh-grade year as a full-time residential student.

In a letter dated September 7, 2017, Newton denied the Does' request for reimbursement for David's enrollment at Franklin. The letter restated Newton's assertion that the August 2017 IEP would provide David with a FAPE. Newton also proposed placing David in a 45-day "extended evaluation" in a therapeutic

day program. The Does rejected the proposal and chose to keep David enrolled at Franklin.

In February 2018, the Does engaged Dr. Jason McCormick, a neuropsychologist who specializes in treating children and young adults with autism, to evaluate David. Based on that evaluation, Dr. McCormick recommended that David be placed in an educational program that has a specific focus on students with autism "who present with both social and executive challenges, along with emotional disabilities." Dr. McCormick also concluded that David's "need for social instruction throughout the entire day" along with the "near certainty that he would not participate in unstructured social activities were he to be placed in a day program, necessitates his placement in a residential setting." Dr. McCormick's evaluation further stated that he would "be highly concerned [if David] return[ed] to Newton North," especially given his prior ideations of suicide, and concluded that the risk of David harming himself would also be significant if he were to transition to any other traditional public high school because his needs "far outstrip what can be accommodated within the context of a mainstream setting."

Newton proposed a revised IEP for David in April 2018 and then proposed another revised IEP in March 2019, as his twelfth-grade year was winding down. Under the April 2018 and March 2019 IEPs, David would have been placed in a therapeutic day

school (rather than the LINKS program at Newton North), though Newton did not identify that new school. Under each of these IEPs, David would have had to leave Franklin, as he was a boarder at Franklin. The Does rejected the April 2018 and March 2019 IEPs.

**2.**

On January 3, 2019, the Does filed a due process hearing request with the BSEA. The request alleged that Newton had violated the IDEA by failing to offer David an IEP reasonably calculated to provide him with a FAPE during the period spanning from March 2017 to June 2019. More specifically, the Does sought an order from the BSEA declaring that the IEPs proposed by Newton in March 2017 (as it was ultimately amended in August 2017) and in April 2018 were not reasonably calculated to provide David with a FAPE,[1] and requiring Newton to reimburse them for costs associated with their placement of David at Franklin "since August 2017 to the present."

The BSEA conducted a due process hearing on May 20 and 21, 2019. The BSEA heard testimony from, among others, David's medical providers, members of his IEP team, and Dr. Colleen Meigher, a school psychologist employed by Newton.

---

[1] Newton had not yet proposed the March 2019 IEP at the time the Does filed their due process hearing request. However, after the school district proposed (and the Does rejected) the March 2019 IEP, the Does amended their BSEA hearing complaint to challenge the sufficiency of that plan as well.

- 14 -

The BSEA denied the Does' claim for reimbursement in a written decision issued on August 9, 2019. The BSEA did so on the ground that the IEPs proposed by Newton were reasonably calculated to provide David with a FAPE in the least restrictive environment for the relevant periods.[2]

The Does thereafter filed a complaint in the United States District Court for the District of Massachusetts under the IDEA. The complaint alleged, among other things, that the BSEA erred in concluding that Newton had provided David with a FAPE for the time in question. The complaint sought relief in the form of an order declaring that Newton "failed to provide a FAPE to David" for his eleventh- and twelfth-grade school years, that the Does "acted reasonably" in unilaterally placing him in Franklin's residential program for those years, and an order requiring that Newton reimburse the Does for all costs that the Does had incurred in connection with David's enrollment at Franklin, including travel and boarding expenses.

---

[2] The BSEA order explained that the proposed August 2017 IEP, because it would have placed David in Newton North's LINKS program, provided David with a FAPE, and thus that the BSEA need not address the school's subsequent offer to conduct a 45-day evaluation of David in a therapeutic day school. The order also determined that it would not have been appropriate for the BSEA to address that offer in determining whether Newton provided David a FAPE because the proposal was made outside of the "IEP Team" process. See 20 U.S.C. § 1414(d); see also Burlington, 471 U.S. at 368 (explaining that the IDEA requires an IEP "to be developed jointly" by the members of the child's IEP team).

The Does, Newton, and the BSEA simultaneously moved for summary judgment.[3] Following a hearing, the District Court granted the Does' motion and denied the motions by Newton and the BSEA. The District Court did so based on its conclusion that the IEPs offered by Newton in August 2017, April 2018, and March 2019 were not reasonably calculated to provide David with a FAPE. Doe v. Newton Pub. Schs., 537 F. Supp. 3d 56, 68-70 (D. Mass. 2021).

The District Court also held that the Does' placement of David at Franklin was "appropriate" because it provided the "therapeutic support [David] needed," resulting "in significant benefits to his mental health." Id. at 68. The District Court acknowledged that Franklin was "not the least-restrictive environment for David," but it also ruled that this fact did not in and of itself "bar reimbursement under the IDEA" for the costs that the Does' incurred in placing David there. Id. at 69. The District Court reasoned that a parent's unilateral placement of a child in a private program is not subject to the LRE requirement where, as the District Court determined was the case here, the school district failed to provide the student with a FAPE. Id.

---

[3] As we recently observed, in "civil actions of this sort," a motion for summary judgment is "simply a vehicle for providing review of the underlying administrative ruling." G.D., 27 F.4th at 6 n.1 (quoting S. Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st Cir. 2014) (internal quotation omitted)).

- 16 -

The District Court therefore granted the Does' request for reimbursement.  Id. at 70.

Even though the District Court ruled that the Does' placement of David at Franklin was "appropriate" under the IDEA, id. at 69, it rejected their request for reimbursement for residential expenses (i.e., boarding and travel) for David's eleventh- and twelfth-grade years at Franklin.  The District Court concluded that the requests for reimbursement of those expenses was "unreasonable" on the ground that David did not require a residential placement in order to receive a FAPE under the IDEA and a therapeutic day program would have been suitable to meet his needs, id. at 70-71 (quoting Florence Cty., 510 U.S. at 16).

Newton and the BSEA timely filed appeals.  The Does filed a cross-appeal in which they challenge the District Court's exclusion from the order of reimbursement the costs related to boarding David at Franklin during his eleventh- and twelfth-grade years.

## II.

We begin with the challenge that Newton and the BSEA make to the District Court's ruling that Newton denied David a FAPE for his eleventh-grade year at Newton North.  With respect to this ruling, we review questions of law de novo and findings of fact for clear error.  Johnson, 906 F.3d at 191; Doe v. Cape Elizabeth Sch. Dist., 832 F.3d 69, 76 (1st Cir. 2016).  Where

- 17 -

issues involve mixed questions of law and fact, we have employed a "degree-of-deference continuum," calling for "non-deferential plenary review" of "law-dominated questions" and more "deferential review" where the questions are "fact-dominated." Cape Elizabeth, 832 F.3d at 76-77 (quoting Mr. I ex rel L.I. v. Me. Sch. Admin. Dist. No. 55, 480 F.3d 1, 10 (1st Cir. 2007)).

In undertaking this review, we must keep in mind that the District Court's role in addressing a challenge under the IDEA to an administrative ruling is an exercise of "involved oversight" of the agency's factual findings and conclusions. S. Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st Cir. 2014) (quoting Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 84 (1st Cir. 2012)). In accord with that role, the District Court must afford "due weight" to the determinations made in the administrative proceedings. Lenn, 998 F.2d at 1087 (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982)); see id. ("Although the exact quantum of weight is subject to the district judge's exercise of informed discretion, the judge is not at liberty either to [ignore] administrative findings or to discard them without sound reason.") (internal citations omitted). In determining whether a proposed IEP is reasonably calculated to provide a student with a FAPE under the IDEA, the District Court must base its decision "on the

preponderance of the evidence." G.D., 27 F.4th at 6 (quoting 20 U.S.C. § 1415(i)(2)(C)(iii)).

## A.

Newton and the BSEA first assert that the District Court committed legal error in ruling that Newton had denied David a FAPE for his eleventh-grade year at Newton North because the District Court failed to give, in Newton's words, "any deference" to the factual findings that the BSEA hearing officer made based on the testimony that various educators at Newton North had given in the "due process" hearing. But, insofar as Newton and the BSEA mean to argue that the District Court failed to apply the proper standard of review in considering the record at hand, we cannot agree.

As will become clear below, the District Court carefully explained the findings that the BSEA hearing officer made with which it disagreed, and why it disagreed with them. See Newton Pub. Schs., 537 F. Supp. 3d at 68-71. And, before undertaking that analysis of the BSEA hearing officer's findings, the District Court correctly recounted the "due weight" standard of review. See id. at 66. The District Court then went on to apply that same standard. Id. at 68, 70. We thus see no basis for concluding

that the District Court committed a legal error by failing to apply the "due weight" standard of review.[4]

**B.**

We proceed, then, to the closely related contention that Newton and the BSEA make that concerns how the District Court applied the "due weight" standard of review, even assuming that the District Court did in fact apply it. We are not persuaded.

Specifically, Newton and the BSEA contend that the District Court's error in applying that deferential standard of review inhered in its decision to give more weight to the recommendation by David's treating clinicians that David be considered for placement in a therapeutic school than to the recommendation that had been made by Newton educators that Newton North's LINKS program would be appropriate for David.

But, we are reviewing the way that the District Court resolved a "fact-dominated" mixed question of law and fact. Cape Elizabeth, 832 F.3d at 76. Thus, while the District Court was required to give "due weight" to the findings of the BSEA in the administrative proceedings, Newton and the BSEA must show more

---

[4] While Newton and the BSEA, pointing to Sebastian M., 685 F.3d at 86, argue that this court has held that it is "entirely proper" for a District Court to "give deference to the hearing officer's weighing of the testimony," we note that it may also be entirely proper for a District Court, after having given such "due weight" to a hearing officer's finding, to nevertheless reach a different conclusion based on the facts in the record.

- 20 -

than that there is evidence in the record that could support a ruling different from the one that the District Court made in rejecting the BSEA's conclusion that David had been given a FAPE during the year in question. Id. They must show that, notwithstanding the deference that we owe to the District Court on such a fact-laden legal question, the record requires us to overturn it. They fail to do so.[5]

Newton and the BSEA do point to testimony from multiple members of David's IEP team and other Newton educators at the BSEA hearing that the August 2017 IEP's inclusion of the LINKS program made that IEP suitable for David, notwithstanding the McLean letter's recommendation that David attend a therapeutic school. For example, Dr. Meigher testified, among other things, that the LINKS program provided adequate therapeutic support to meet David's needs because it would have provided a "home base" throughout the school day, with access to staff experienced in working with children with autism, in addition to individual and group counseling.

But, the District Court did not dispute that the evidence in the record showed that the LINKS program that the August 2017

---

[5] We do not understand Newton and the BSEA to be claiming that the District Court made any particular, purely factual finding that is clearly erroneous on the record. To the extent they are making such an argument, we see no fact upon which the District Court relied in reaching its decision that is not adequately supported by the record.

IEP proposed for David would have provided "some therapeutic benefit." Newton Pub. Schs., 537 F. Supp. 3d at 67. It determined only that, in light of the evidence in the record, that IEP was nevertheless not reasonably calculated to provide David with a FAPE because it would have required his participation in the "full-inclusion model" at Newton North. Id. at 67-68. And there is substantial record support for that conclusion.

Specifically, the record contains a recommendation by David's treating clinicians at McLean that David be placed in "a therapeutic school." It also contains the Does' corresponding concern at the time that the LINKS program was insufficient to ensure that David would see educational gains, in addition to their concern for his safety in light of his ideations of suicide if he were required to return to Newton North. And, there was a strong basis for giving this latter set of evidence about the need for David to be placed in a therapeutic school greater weight than the evidence about the adequacy of LINKS that had been provided through testimony from the Newton educators on which the BSEA had relied so heavily. After all, the professionals who made the recommendation that David be placed in a therapeutic school had conducted the most recent evaluations of David. Id. at 67. As the District Court explained: "Dr. Meigher testified that she had seen David for only one psychological evaluation, in 2016, during his time at Newton," and that "Dr. Adams and Lopes from McLean

- 22 -

. . . were responsible for David's psychiatric care during the events of the summer leading to his unilateral placement, and . . . were better positioned than Dr. Meigher to understand David's needs at the time that the August 31, 2017 IEP was developed." Id. Thus, we see no merit to this aspect of the challenge by Newton and the BSEA.

## C.

Newton and the BSEA also challenge the District Court's purported reliance in ruling that David had been denied a FAPE for his eleventh-grade year on the fact that the later IEPs proposed by Newton in April 2018 and March 2019 recommended that David be placed in an "out-of-district public/private day school." Newton and the BSEA argue that the District Court's consideration of the 2018 and 2019 IEPs to assess the adequacy of the August 2017 IEP conflicts with our command that the determination of whether an IEP was reasonably calculated to provide a FAPE "must take into account what was, and was not, objectively reasonable . . . at the time the IEP was promulgated." Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir. 1990). To support this argument, Newton and the BSEA point to the following passage in the District Court's opinion and, in particular, its second sentence: "Based on an intermediate level of review, I find that the IEP in August 2017 was not adequate given David's severe mental health needs and crisis during the summer of 2017. This conclusion is buttressed

by Newton's decision in the two subsequent IEPs . . . ."  Newton Pub. Schs., 537 F. Supp. 3d at 68.

The District Court's use of the word "buttressed" in that passage, however, does not show that the District Court premised its determination that the August 2017 IEP was not adequate on the recommendations that the subsequent IEPs that Newton proposed made.  As we have explained, there is evidence in the record that Newton had on hand at the time that it proposed the August 2017 IEP that in and of itself sufficed to support the District Court's determination that the August 2017 IEP was not "reasonably calculated" to provide David with a FAPE.  Id. at 66-68.  Against that backdrop, the District Court's use of the word "buttressed" comfortably may be read to indicate only that the subsequent IEPs that Newton proposed accorded with the determination that the District Court independently reached based only on the evidence in the record that showed what Newton knew at the time that the August 2017 IEP was proposed.  Id. at 68.[6]

---

[6] Because we do not understand the District Court to have relied on the subsequent IEPs as a necessary predicate for its determination that the August 2017 IEP was not reasonably calculated to provide David with a FAPE for his eleventh-grade year, we need not address Newton's and the BSEA's contention that the record does not support the District Court's assessment of the import of the subsequent IEPs.

- 24 -

### III.

Newton and the BSEA next turn their attention to the District Court's reimbursement order, which requires Newton to reimburse the Does for certain expenses associated with David's enrollment at Franklin Academy for his eleventh- and twelfth-grade years. Newton and the BSEA make a number of distinct arguments, which we address in turn.

### A.

Newton and the BSEA first rely on Florence County, 510 U.S. at 15, which requires a District Court to undertake a two-step inquiry in determining whether to order reimbursement for a parent's unilateral placement of their child in a private educational setting for which they incur costs. That two-step inquiry requires the District Court first to determine whether the child has been denied a FAPE and, then, only after having determined that the child has been denied a FAPE, to determine whether the unilateral placement of the child in the private educational setting was "proper." Id. at 15.

Newton and the BSEA contend that, at least with respect to David's twelfth-grade IEPs, the April 2018 and March 2019 IEPs, the District Court skipped the first step of the inquiry and jumped right to the second. But, Newton and the BSEA misread the opinion of the District Court.

Consistent with Florence County, the District Court did take step one before proceeding to step two.  It found that the proposed April 2018 and March 2019 IEPs were not reasonably calculated to provide David with a FAPE and thus that he had been denied one during his twelfth-grade year in violation of the IDEA.  Newton Pub. Schs., 537 F. Supp. 3d at 70 ("I determine . . . that the April 25, 2018 IEP and the March 25, 2019 IEP did not provide David with a FAPE.").  The District Court reasoned that "removing a student like David from a supportive academic environment" at Franklin "would likely pose emotional and social disruption," and, on that basis, the District Court then concluded that Newton's proposed IEPs -- including the ones that had offered a placement at a therapeutic day program -- were not reasonably calculated to provide David a FAPE.  Id.[7]

**B.**

Newton and the BSEA next turn their attention to the District Court's holding that the proposed April 2018 and March 2019 IEPs were not reasonably calculated to provide David a FAPE on the distinct ground that this holding conflicts with the "snapshot in time" principle (citing Lenn, 998 F.2d at 1086 and

_____

[7] We also note that, on at least two occasions, the BSEA acknowledges in its briefing to us that the District Court found that "David's twelfth-grade year IEPs, recommending a therapeutic day school, did not provide David with a FAPE."

Roland M., 910 F.2d at 992).[8]  But, while it is true that the testimony the District Court cited regarding the negative impact that a transfer out of Franklin would have on David's social-emotional wellbeing "was not available to David's [IEP] Team at the time of the April 25, 2018 IEP meeting and the March 25, 2019 IEP meeting," the District Court noted that this testimony merely spoke to the "common-sense notion" that a school transfer out of "a supportive academic environment" would be detrimental to "a student like David" -- a notion that, in light of David's particular circumstances, would have been apparent to Newton at the time the IEPs were offered.  Newton Pub. Schs., 537 F. Supp. 3d at 70.  Moreover, Newton and the BSEA do not contend that the record contradicts the finding that Newton would have been aware of the harms that David would suffer from a school transfer at the time of the April 2018 and March 2019 IEPs, and our review of the

---

[8] We note that, although Newton's brief presents this argument in connection with its challenge to the District Court's asserted "error" in "ordering Newton to reimburse parents for the day portion of tuition at Franklin," this argument appears to lodge a challenge to the District Court's determination that the April 2018 and March 2019 IEPs were inadequate, assuming the District Court made such determinations.  In line with the way that Newton has chosen to brief the case on appeal, however, we address this contention alongside Newton's and the BSEA's other challenges to the District Court's reimbursement order.  Our reasons for rejecting this argument in connection with Newton's challenge to the reimbursement order, however, suffice to explain why we also reject the argument insofar as Newton makes it in service of a challenge to the District Court's determinations regarding the inadequacy of those IEPs.

record satisfies us that Newton was.[9]  Thus, we reject the contention that the District Court's ruling violated the snapshot in time principle.[10]

## C.

Newton and the BSEA next challenge the portion of the District Court's reimbursement order that requires Newton to pay for David's twelfth-grade tuition costs at Franklin.  Newton and the BSEA contend that, by imposing this requirement, the District Court created a rule that ties the hands of school districts and "threatens to impose unduly burdensome financial obligations on public school districts."  They assert that, under the District Court's ruling, "school districts face a near-blanket edict that, once parents unilaterally move a student to another placement, local school districts cannot move the student back, solely due to potential concerns with transitioning itself -- for which a local

---

[9] We do note that Newton and the BSEA take issue with the Does' purported failure to raise the concerns about David's transition from Franklin at the April 2018 and March 2019 IEP team meetings, which they suggest could have prompted the IEP team to affirmatively address such concerns in the IEPs.  That said, neither the BSEA nor Newton has developed an argument to us as to why such a failure would require reversal (or remand) if the record otherwise supports the conclusion that Newton was on notice of such concerns.  We therefore consider any such argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[10] To the extent one might suggest that further fact finding as to the substantive adequacy of the April 2018 and March 2019 IEPs in question may have been appropriate in these circumstances, neither Newton nor the BSEA have asked for such relief, and we therefore do not consider the question.

school district can, in fact, provide additional supports to assist the student."

But, the District Court made no such categorical ruling. It premised its holdings that the April 2018 and March 2019 IEPs were inadequate and that David's placement at Franklin was appropriate on the "limited" circumstances of "David's case." Newton Pub. Schs., 537 F. Supp. 3d at 70. Those circumstances included the fact that the record supportably showed that David would have suffered emotionally and academically had he been required to transfer from Franklin -- where he had been making demonstrable gains -- due to his particular disability. Id.

Thus, the District Court's reasoning is consistent with the highly individualized inquiry into the "unique needs" of the child that the IDEA mandates, Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 244-45 (2009) (quoting 20 U.S.C. § 1400(d)(1)(A)); see also Florence Cty., 510 U.S. at 15-16, given that the District Court assessed the specific impact that the transition out of Franklin would have for David -- and appropriately cabined its reasoning to the facts of this case, see Newton Pub. Schs., 537 F. Supp. 3d at 70. We note, too, that, in recognizing that an IEP in some cases may not be reasonably calculated to provide a FAPE due to circumstances related to a transfer from an appropriate private placement, we are in harmony with both our own precedent, see Parent/Pro. Advoc. League v. City of Springfield, 934 F.3d 13, 29

(1st Cir. 2019), and that of courts outside of this circuit that have addressed the subject, see, e.g., S.H. v. State Op. Sch. Dist., 336 F.3d 260, 272 (3d Cir. 2003) ("[I]f a change in her placement will be detrimental, this is a factor in determining whether the new placement will achieve a meaningful educational benefit."); see also Dall. Indep. Sch. Dist. v. Woody, 865 F.3d 303, 317 (5th Cir. 2017).

### D.

Finally, Newton and the BSEA contend that the District Court erred in ordering reimbursement by failing to account properly for the IDEA's principle that students should be placed in the "least restrictive environment," and that "a student 'who would make educational progress in a day program is not entitled to a residential placement even if the latter would more nearly enable the child to reach his or her full potential'" (citing Lenn, 998 F.2d at 1086) (internal quotation marks and citation omitted)). But, as the District Court correctly recognized, "the least-restrictive environment principle [and] the 'mainstreaming' provision of the IDEA [do] not require [parents] to place [their child] in the least restrictive environment if [the] IEP does not provide [a] FAPE," such that parents who make such a placement for their child are not necessarily barred from seeking reimbursement for the costs that they incur in consequence of such a placement. Newton Pub. Schs., 537 F. Supp. 3d at 69 (citing Frank G. v. Bd of

- 30 -

Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006), and Warren G. ex rel. Tom G. v. Cumberland Cty. Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999)); see also Florence Cty., 510 U.S. at 9-10 (holding that unilateral private placement may be "proper under [the] IDEA" even if a placement does not meet all the requirements that school districts face in providing a FAPE). Thus, we reject this ground for challenge to the reimbursement order as well.

**IV.**

We now turn our attention to the Does' challenge, as cross-appellants, to the District Court's exclusion of costs related to David's residence at Franklin (i.e., boarding and travel expenses) from the reimbursement order. We do not find it to be persuasive.

"Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required. Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable." Florence Cty., 510 U.S. at 16. We review "discretionary equitable relief" determinations under the IDEA for "abuse of discretion." Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 31-32 (1st Cir. 2006); see also, e.g., Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1183 (9th Cir. 2009) ("[B]ecause the district court had equitable discretion to craft appropriate relief in this case, we

- 31 -

review its decision to deny reimbursement for abuse of that discretion."). We find none here.

## A.

The Does primarily contend that the District Court's award reduction must be reversed because it has no "basis in the record," which, they argue, "contained no evidence regarding the reasonableness of Franklin tuition." This argument, however, misunderstands the nature of the District Court's order.

The District Court did not purport to make a finding as to the reasonableness of Franklin's cost based on a price-comparison analysis. The District Court found that it was unreasonable to expect Newton to pay for "any" of David's housing or travel expenses at Franklin. Newton Pub. Schs., 537 F. Supp. 3d at 70-71 (emphasis added). And, the District Court did so based on its determination that David was not entitled to a residential placement under the IDEA. See id. at 70. Thus, particularly given that even David's treating clinicians had not recommended him for a residential placement at the time that the Does unilaterally selected Franklin, we see no merit to this ground of challenge.

## B.

The Does also claim that we should reverse the District Court's decision to exclude boarding and travel costs from the reimbursement order on the ground that the District Court's determination that David was not entitled to a residential

placement under the IDEA was erroneous.[11]  They appear to argue that the record evidence compels a determination that he did require such a placement in order to receive a FAPE.  In their view, had the District Court correctly determined that David required a residential placement, there would have been no basis for its decision to reduce the reimbursement by excluding travel and boarding-related expenses.

But, as we noted above, to show that the District Court's ruling warrants reversal on a "fact-dominated" mixed question of law and fact, which we conclude that this question is, a party must show more than that there is contrary evidence in the record. See Cape Elizabeth, 832 F.3d at 76.  And as we will explain, the Does have failed to do so here.

The Does do point to a February 2018 letter from Dr. McCormick recommending a residential placement.  They also point to testimony from two Franklin educators who expressed support for such a placement. But, other evidence in the record supports the District Court's finding that David could have made progress in a less restrictive environment, such as a therapeutic day program,

---

[11] We note that the Does also make the argument that the record compels the determination that David required a residential placement as an alternative ground for affirming the District Court's rulings that the April 2018 and March 2019 IEPs, which offered David a placement in a day school, were not reasonably calculated to provide David a FAPE.  But, we affirmed those rulings on other grounds.

- 33 -

and the District Court adequately explained why the McCormick letter was insufficient to overcome that contrary evidence. Newton Pub. Schs., 537 F. Supp. 3d at 70 (noting that Dr. McCormick's recommendation was "speculative" in nature, and that Dr. McCormick "never observed David outside his office"); see also Lenn, 998 F.2d at 1086 (A student "who would make educational progress in a day program is not entitled to a residential placement even if the latter would more nearly enable the child to reach his or her full potential.") (internal quotations omitted). Thus, we decline to disturb the District Court's reimbursement order on this ground.

## C.

As a fallback argument, the Does assert that, by denying reimbursement for David's residential expenses at Franklin, the District Court effectively imposed a requirement that a unilateral placement must comply with the "least restrictive environment" principle to qualify for reimbursement -- something that, as noted, is not required by the IDEA. Again, we disagree.

As the District Court recognized, a parent's unilateral placement need not represent the "least restrictive environment" for the parents to qualify for reimbursement. Newton Pub. Schs., 537 F. Supp. 3d at 69. But, it does not follow that in assessing whether the "cost of the private education" that the parents selected in their unilateral private placement was "unreasonable," a District Court must treat as irrelevant whether the child could

- 34 -

have been placed in a less restrictive environment (i.e., a non-residential environment) under an adequate IEP. Florence Cty., 510 U.S. at 16; see also Burlington, 471 U.S. at 370-71 (reviewing the reimbursement provision of the IDEA and its legislative history and stating that reimbursement "merely requires the [school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP" (emphasis added)). In consequence, we conclude that the District Court did not err in exercising its discretion to reduce the Doe's reimbursement upon finding that the boarding "cost[s] of [David's] private education w[ere] unreasonable," Florence Cty., 510 U.S. at 16, based on its determination that David could have been provided a FAPE in a non-residential setting.

In so holding, we also reject the Does' contention that their position draws support from Leggett v. District of Columbia, 793 F.3d 59, 75 (D.C. 2015). The Does contend that Leggett establishes that once a District Court concludes that the school system failed to provide a FAPE and that the parents' unilateral placement was appropriate, the IDEA "requires reimbursement for tuition, room and board, and other related educational expenses -- even if costly." Id. But, the holding in that case is expressly limited to circumstances in which the school program that the child needed to be placed in to be provided a FAPE was only shown to have been available at a residential placement. Id. at 74. Thus,

we do not see how Leggett can support the Does' position here, given that the District Court supportably found that David did not need a placement at a residential school to receive a FAPE, at least given that the Does develop no argument that there was no nonresidential alternative to Franklin in which he would have received the kind of therapeutic schooling that the District Court determined that he required to receive a FAPE.

**V.**

**Affirmed**.